# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **DOUGLAS W. BAILLIE,** | ) | **Case No.1:02cv00062-SAS** |
| | ) | |
| **Plaintiff,** | ) | **(Judge S. Arthur Spiegel)** |
| | ) | |
| **-v-** | ) | |
| | ) | |
| **CHUBB & SON INSURANCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, Chubb & Son Insurance ("Chubb"), respectfully moves for an Order granting summary judgment in its favor. The grounds for this Motion are set forth in the attached Memorandum in Support, an Appendix filed separately, and the evidence in the record.

Respectfully submitted,

s/ David K. Montgomery
David K. Montgomery (0040276)
Mark J. Chumley (0067321)
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
(513) 579-6475
(513) 579-6457 - Facsimile
Attorneys for Defendant,
Chubb & Son Insurance

# TABLE OF CONTENTS

**Page No.**

I.    SUMMARY OF POINTS AND AUTHORITIES ...............................................1

    A.    Chubb Is Entitled To Summary Judgment On Plaintiff's Claims Of Age Discrimination Because Baillie Cannot Establish Pretext. ....................................1

    B.    Chubb Is Entitled To Summary Judgment With Respect To Baillie's "Promissory Estoppel" And Retaliation Claims Because They Are Based On Inadmissible Settlement Discussions And Refuted By The Undisputed Facts. ......................................................................................................................1

        1.    Unsuccessful Settlement Discussions Are Not Admissible and May Not Give Rise to Legal Claims. ....................................................1

        2.    Baillie's Promissory Estoppel Claim is Refuted by the Undisputed Facts. ......................................................................................2

        3.    Baillie's "Retaliation" Claim is Also Refuted By the Undisputed Facts. ......................................................................................3

    C.    Chubb is Entitled to Summary Judgment With Respect To Baillie's ERISA Count Because He Admits There is No Evidence of Any Violation. ................................................................................................................3

    D.    Plaintiff's Public Policy Claims Are Derivative Of His Other Claims And Fail For The Same Reason. ......................................................................4

    E.    Plaintiff Has No Admissible Evidence of Actionable Defamation. ......................4

    F.    Chubb is Entitled to Summary Judgment With Respect to Any Claim that Baillie Was Damaged by His Decision Not to Exercise Valuable Stock Options. ..................................................................................................................4

    G.    Chubb is Entitled to Summary Judgment on Baillie's Claims for Punitive Damages Under Ohio Law. ......................................................................5

II.    INTRODUCTION AND SUMMARY .......................................................................5

III.    STATEMENT OF UNDISPUTED FACTS ................................................................6

    A.    Chubb's U.S. Operations ......................................................................................6

    B.    Baillie's Employment History with Chubb ..........................................................6

    C.    Baillie Admits There is no Evidence That Szerlong is Age Biased. ......................7

D.    Szerlong's Reasons For Terminating Baillie are Well Documented. ......................7

E.    Szerlong's Perceptions Regarding Baillie's Leadership Deficiencies Are Confirmed By the Sworn Testimony of Many of the Managers Who Reported to Baillie. ..............................................................................9

F.    The Branch/ Regional Financial Results Were Far From "Superior" During Baillie's Tenure. .....................................................................13

G.    After He is Informed of His Termination, Baillie Elects Not to Exercise His Vested Stock Options. .........................................................14

H.    Baillie Rejects Chubb's Initial  Settlement Proposal. ............................14

I.    Baillie Twice Rejects Chubb's Enhanced Settlement Proposal...........................15

J.    Baillie Purports to "Orally Accept" Chubb's Enhanced Settlement Offer Long After It Expired and Was Rejected..............................16

K.    Chubb Again Extends The Enhanced Settlement Offer and Baillie Again Rejects It. ............................................................................17

L.    Baillie Admits There Is No Admissible Evidence Of Defamation Or ERISA Violations. .................................................................18

IV.    STANDARD OF REVIEW ...........................................................18

V.    ARGUMENT.............................................................................19

A.    Chubb Is Entitled To Summary Judgment On Plaintiff's Claims Of Age Discrimination Because Baillie Cannot Establish Pretext. ....................19

B.    Chubb Is Entitled To Summary Judgment With Respect To Baillie's "Promissory Estoppel" And Retaliation Claims Because They Are Based On Inadmissible Settlement Discussions And Refuted By The Undisputed Facts. ...................................................................20

   1.    Unsuccessful Settlement Discussions Are Not Admissible and May Not Give Rise to Legal Claims. ............................................20

   2.    Baillie's Promissory Estoppel Claim is Refuted by the Undisputed Facts. ...........................................................................23

   3.    Baillie's "Retaliation" Claim is Also Refuted By the Undisputed Facts ...........................................................................25

C.    Chubb is Entitled to Summary Judgment With Respect to Baillie's ERISA Count Because He Admits There is No Evidence of Any Violation. ....................26

D.    Plaintiff's Public Policy Claims Are Derivative Of His Other Claims And Fail For The Same Reasons. ..................................................................................27

E.    Plaintiff Has No Admissible Evidence of Actionable Defamation. ......................27

F.    Chubb is Entitled to Summary Judgment With Respect to Any Claim that Baillie Was Damaged by His Decision Not to Exercise Valuable Stock Options. ...............................................................................................................29

G.    Chubb is Entitled to Summary Judgment on Baillie's Claims for Punitive Damages  Under Ohio Law. ...................................................................................29

VI.    CONCLUSION........................................................................................................30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Baker v. Kaiser Aluminum & Chemical Corp.*, 608 F.Supp. 1315 (N.D.Cal. 1984) .....3, 27

*Bower v. Steinerikson Lodge Owners Association, Inc.*, 201 F.2d 1134 (D.Utah 2002) ...........................................................................................................2, 21

*Brink v. Union Carbide Corp.*, 41 F.Supp.2d 406 (S.D.N.Y. 1999)..............................3, 26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................18

*Corum v. Farm Credit Services*, 628 F.Supp. 707 (D.Minn. 1986)...............................3, 27

*Dews v. A.B. Dick Co.*, 231 F.3d 10106 (6th Cir. 2000)................................................1, 19

*Fenton v. HiSan, Inc.*, 174 F.3d 827 (6th Cir. 1999) ......................................................4, 27

*Gavalik v. Continental Can Co.*, 812 F.2d 834 (3d. Cir. 1987) ....................................3, 27

*Johnson v. Kroger Co.*, 319 F.3d 858 (6th Cir. 2003) ......................................................19

*Nance v. Maxwell Federal Credit Union* (MAX), 186 F.3d 1338 (11th Cir. 1999).......4, 29

*Rogic v. Mallinckrodt Medical, Inc.*, 917 F.Supp. 671 (E.D.Mo. 1996) .........................26

*Rush v. United Technologies, Otis Elevator Division*, 930 F.2d 453( 6th Cir. 1991) ....3, 26

*Shahid v. Ford Motor Co.*, 76 F.3d 1404 (6th Cir. 1995)................................................3, 26

*Snyder v. Ag Trucking, Inc.*, 57 F.3d 484 (6th Cir. 1995)...............................................4, 28

*Southwest Nurseries, LLC v. Florists Mutual Insurance, Inc.*, 266 F.Supp.2d 1253 (D.Colo. 2003) ...........................................................................................1, 21

*Street v. J.C. Bradford and Company*, 886 F.2d 1472 (1989) .........................................18

*Vanguard Insurance Company v. Havadjia*, 886 F.2d 1321 (9th Cir. 1989).................2, 21

*Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000) .....................................3, 26

## STATE CASES

*Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470 ...........................................30

*Condon v. Body, Vickers & Daniels*, 99 Ohio App.3d 12 (1994) ...................................3, 24

*Dietz-Britton v. Smythe, Cramer Co.*, 139 Ohio App.3d 337 (2000) ...........................2, 23

*Fallang v. Cormier*, 63 Ohio App.3d 450 (1989) ...........................................................4, 28

*Hecht v. Levin*, 66 Ohio St.3d 458 (1993) .....................................................................4, 28

*Hill v. Christ Hospital*, 131 Ohio App.3d 660 (1998) ...................................................2, 24

*Mauzy v. Kelly Services*, 75 Ohio St.3d 578 (1996) .......................................................1, 20

*Peterson v. Buckeyes Steel Casting*, 133 Ohio App.3d 715 (1999)..............................3, 25

*Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417 (1999) ....................................................5, 30

*Sheets v. Rockwell Internatl. Corp.*, 68 Ohio App.3d 345 (1990) ................................2, 24

*Talley v. Teamsters Local No. 377*, 48 Ohio St.2d 142 (1976)......................................2, 23

*Weiper v. W.A. Hill & Associate*, 104 Ohio App.3d 250 (1995) ............................2, 23, 24

## UNREPORTED

*Bowie v. Advanced Ceramics Corp.*, 2003 WL 21580406 (6th Cir. 2003) ...................1, 19

*High v. Genting/Castle, Inc.*, 2002 WL 31951256 (S.D.Ohio 2002) ...........................3, 26

*Toole v. Cook*, 1999 WL 280804 (1999) .......................................................................5, 30

## STATUTES

Federal Rule of Civil Procedure 408 ...................................................................................1

Federal Rule of Evidence 408…………………………………………………...............6,17

Federal Rule of Civil Procedure 56 ...................................................................................17

Federal Rule of Civil Procedure 408 ...............................................................................20

O.R.C. §2315.21 ..................................................................................................................5

<u>MEMORANDUM IN SUPPORT</u>

## I.  SUMMARY OF POINTS AND AUTHORITIES[1]

### A.  Chubb Is Entitled To Summary Judgment On Plaintiff's Claims Of Age Discrimination Because Baillie Cannot Establish Pretext.

Chubb is entitled to summary judgment with respect to Baillie's age discrimination claims.  The undisputed facts confirm that Baillie was terminated for a legitimate, non-discriminatory reason and Baillie has provided insufficient evidence that the proffered reason was mere pretext.  *See Dews v. A.B. Dick Co.*, 231 F.3d 10106, 1021 (6th Cir. 2000).  An employer is not required to prove that its articulated reason for termination is accurate—only that it had a good faith belief, formulated through a reasonable reliance on particularized facts, for its employment decision.  *See Bowie v. Advanced Ceramics Corp.*, 2003 WL 21580406 (6th Cir. 2003).

Here, Chubb's reason for terminating Baillie is well documented and supported by the testimony of many witnesses.  Because Baillie is unable to rebut the employer's proffered reason for termination, Chubb is entitled to summary judgment as to Baillie's First Count for violation of the ADEA and Second Count for age discrimination under Ohio law.  *See Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578 (1996).

### B.  Chubb Is Entitled To Summary Judgment With Respect To Baillie's "Promissory Estoppel" And Retaliation Claims Because They Are Based On Inadmissible Settlement Discussions And Refuted By The Undisputed Facts.

#### 1.  Unsuccessful Settlement Discussions Are Not Admissible and May Not Give Rise to Legal Claims.

Baillie's claims for retaliation and promissory estoppel must be dismissed because they are based on inadmissible settlement discussions.  Federal Rule of Civil Procedure 408 clearly prohibits the introduction into evidence of settlement offers and "conduct or statements made in

---

[1] Submitted pursuant to S.D. Ohio L.R. 7.2(a)(3).

compromise negotiations." *See, e.g., Southwest Nurseries, LLC v. Florists Mutual Insurance, Inc.*, 266 F. Supp.2d 1253 (D. Colo. 2003). *See also Vanguard Insurance Company v. Havadjia*, 886 F.2d 1321 (9th Cir. 1989); *Bower v. Steinerikson Lodge Owners Association, Inc.*, 201 F.2d 1134, 1139-40 (D. Utah 2002). Thus, pursuant to Federal Rule of Evidence 408, the "settlement discussions" between Baillie and Chubb are not admissible and may not be used to support Baillie's "promissory estoppel" or "retaliation" theories. As such there is no admissible evidence supporting these counts and Chubb is entitled to summary judgment.

2.    **Baillie's Promissory Estoppel Claim is Refuted by the Undisputed Facts.**

Alternatively, Baillie's "promissory estoppel" claim must be dismissed because it is refuted by the undisputed facts, including Baillie's deposition testimony. In order to establish a claim for promissory estoppel, Baillie must prove the following elements: (1) a promise, clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance that is reasonable and foreseeable; and (4) injury caused by the reliance." *Dietz-Britton v. Smythe, Cramer Co.*, 139 Ohio App.3d 337, 351 (2000) (quoting *Weiper v. W.A.Hill & Assoc.,104 Ohio App.3d 250, 260 (1995)*). *See also Talley v. Teamsters Local No. 377*, 48 Ohio St.2d 142, 146 (1976) (quoting and adopting Restatement of the Law, Contracts 2d (1973)). Baillie can establish none of these elements.

Chubb's written policies regarding severance pay alone destroy any promissory estoppel claim. Moreover, Baillie cannot point to a single "promise" allegedly made by anyone at Chubb that is not based entirely on "supposition." Thus, Baillie's Promissory Estoppel claim fails as a matter of law. *See, e.g., Sheets v. Rockwell Internatl. Corp.*, 68 Ohio App.3d 345, 351-52 (Ohio.App.10.Dist. 1990); *see also Hill v. Christ Hosp.*, 131 Ohio App.3d 660, 668 (Ohio.App.1. Dist. 1998); *see also Weiper v. W.A. Hill & Assoc.*, 104 Ohio App.3d 250, 260 (Ohio.App.1.Dist.

1995); *see also Condon v. Body, Vickers & Daniels*, 99 Ohio App.3d 12, 19 (Ohio App. 8 Dist. 1994).

### 3.    Baillie's "Retaliation" Claim is Also Refuted By the Undisputed Facts.

Baillie's claim that Chubb retaliated against him because he hired an attorney is also directly refuted by the uncontroverted facts.  In order to prevail on a retaliation theory under Ohio law, Baillie must establish, among other elements, that Chubb took an adverse employment action against him and that there is a casual connection between the alleged protected activity – retaining a lawyer—and the adverse action.  *See High v. Genting/Castle, Inc.*, 2002 WL 31951256, at *17 (S.D. Ohio 2002) (citing *Peterson v. Buckeyes Steel Casting*, 133 Ohio App 3d 715, 727 (Ohio App. 10 Dist. 1999)).  Because Baillie can establish no casual relationship between his retention of counsel and any adverse action, Chubb is entitled to summary judgment with respect to Baillie's Third Count for retaliation.

### C.    Chubb is Entitled to Summary Judgment With Respect To Baillie's ERISA Count Because He Admits There is No Evidence of Any Violation.

Baillie's Sixth Count for violation of ERISA Section 510 must be dismissed because, as Baillie has admitted, there is no evidence suggesting his termination was motivated by Chubb's desire to avoid pension liability.  *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir. 1991).  *See also Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000).  *See also Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir. 1996) (quotation omitted). Because a loss of benefits was merely a consequence of, as opposed to a determining factor behind, his termination, Baillie's ERISA claim must fail.  *Brink v. Union Carbide Corp.*, 41 F.Supp.2d 406 (S.D.N.Y. 1999).  *See also Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987); *Corum v. Farm Credit Servs.*, 628 F.Supp 707, 718 (D.Minn. 1986); *Baker v. Kaiser Aluminum & Chem. Corp.*, 608 F.Supp. 1315, 1319 (N.D.Cal. 1984).

**D.     Plaintiff's Public Policy Claims Are Derivative Of His Other Claims And Fail For The Same Reason.**

Baillie's Fourth Count, entitled "Public Policy" simply incorporates his allegations of age discrimination, retaliation, and the ERISA violation and claims that his termination also violates Ohio public policy.  Amended Complaint at ¶¶ 47-51.  Because these claims are derivative of his other unsupported claims, Chubb also is entitled to summary judgment as to this count.  *See Fenton v. HiSan, Inc.*, 174 F.3d 827, 834 (6th Cir. 1999).

**E.     Plaintiff Has No Admissible Evidence of Actionable Defamation.**

Baillie's Seventh Count for defamation also must be dismissed because there is no evidence of any actionable defamation.  Baillie has struggled to identify any false statements about him published by any Chubb employees or agents, other than possibly during depositions in this case.  Baillie Depo. Vol. II at 71.  The law is clear, however, that statements published during depositions are covered by an absolute privilege.  *See e.g., Snyder v. Ag Trucking, Inc.*, 57 F.3d 484 (6th Cir. 1995); citing *Hecht v. Levin*, 66 Ohio St.3d 458  (1993); *Fallang v. Cormier*, 63 Ohio App.3d 450, 452 (Ohio App. 12 Dist. 1989).  Thus, Baillie's Seventh Count for defamation is not supported by any evidence and must be dismissed.

**F.     Chubb is Entitled to Summary Judgment With Respect to Any Claim that Baillie Was Damaged by His Decision Not to Exercise Valuable Stock Options.**

Chubb is entitled to summary judgment on any claim that Baillie may attempt to assert that he was damaged because he failed to exercise his stock options.  He made a choice not to exercise these options because, in his words, "the stock price was too low."  Baillie cannot assert a damages claim for failure to exercise the options because his loss stems from his decision not to exercise the options,  not from his termination.  *See Nance v. Maxwell Federal Credit Union (MAX)*,186 F.3d 1338, 1341-42 (11th Cir. 1999).

### G. Chubb is Entitled to Summary Judgment on Baillie's Claims for Punitive Damages Under Ohio Law.

If this Court should somehow concludes that one or more of Baillie's claims survive summary judgment, it should still grant summary judgment in favor of Chubb on Baillie's state law claims for punitive damages. Under Ohio law, punitive damages are only available if the plaintiff has proven by "clear and convincing evidence" actions of the defendant that "demonstrate malice, aggravated or egregious fraud, oppression, or insult. . . ." O.R.C. §2315.21. _See also_ Rice v. CertainTeed Corp., 84 Ohio St.3d 417, 421-22 (1999); _see also_ Toole v. Cook, 1999 WL 280804, (Ohio App. 10 Dist. 1999). In this case, there is simply no evidence of actual malice in the record

## II. INTRODUCTION AND SUMMARY

This is primarily an age discrimination case brought by Doug Baillie ("Baillie"), the former Cincinnati Branch and Regional Manager for Chubb & Son Insurance Company ("Chubb"). Baillie was terminated in August, 2001 because his supervisor, Tim Szerlong ("Szerlong"), believed his leadership skills were deficient. Szerlong is only one year younger than Baillie and Baillie admits there is no direct evidence of any age bias. Szerlong's perceptions of Baillie's leadership deficiencies were confirmed by the testimony of many of the managers Baillie selected to depose during this litigation. Several of the managers were harsher in their assessment of Baillie's leadership qualities than Szerlong. Under these circumstances, Baillie cannot establish pretext and Chubb is entitled to summary judgment with respect to Baillie's age related causes of action.

Baillie also alleges counts for violation of ERISA and for defamation. During discovery, however, he conceded there was no admissible evidence supporting these theories.

Apparently recognizing the weakness of his age and other claims, Baillie wants the jury to consider settlement discussions regarding an extremely generous severance offer that Baillie allowed to expire and repeatedly rejected. Baillie is not claiming a contract was ever formed. Instead, he claims Chubb's failure to meet his expectations during "settlement discussions" gives rise to "promissory estoppel" and "retaliation" counts. These theories are contrary to Federal Rule of Evidence 408 and also are refuted by the undisputed facts developed during discovery.

Alternatively, Chubb is entitled to summary judgment with respect to Baillie's demand for damages relating to expired stock options. During his deposition, Baillie conceded that he could have exercised his stock options even after he was terminated but chose not to do so. Finally, Baillie's claims for punitive damages under state law should be dismissed because there is no evidence of malice.

## III. STATEMENT OF UNDISPUTED FACTS

### A. Chubb's U.S. Operations

Chubb is an international insurance company with operations throughout the United States. Its U.S. "field" operations are divided into approximately eight "Zones." Zones are divided into "regions" and the regions are then split further into "branches." Generally, Chubb's branches market and underwrite its insurance products through independent "agents" and provide claims and loss control services in connection with policies that are issued.

### B. Baillie's Employment History with Chubb

Plaintiff Doug Baillie began his employment with Chubb in 1975. Amended Complaint at ¶ 9 (copy in Appendix as Exh. A). In 1998 he became the Branch Manager of Chubb's Cincinnati Branch office and the Regional Manager for Chubb's Ohio Valley Region. As Branch Manager he was the highest ranking manager in Chubb's Cincinnati Branch office. In his dual capacity as Regional Manager he also supervised the branch managers of Chubb's

Indianapolis and Cleveland branch offices and the smaller, Louisville and Columbus production offices. Altogether Baillie was responsible for approximately 150 Chubb employees.[2]  Baillie Depo. Vol. I at 40.

At the time of his termination in August 2001, Baillie was 51 years old and had been with Chubb for approximately 26 years. Amended Complaint at ¶¶ 1, 8.  His direct supervisor was Tim Szerlong, the Manager of Chubb's Northern Zone.  Szerlong is only one year younger than Baillie and had been with Chubb even longer.  Szerlong became the Northern Zone Manager and, therefore, Baillie's direct supervisor in the fall of 1999.  Baillie Depo. Vol. I at 45.  In addition to Baillie, Szerlong supervised approximately seven other Branch Managers.

### C.    Baillie Admits There is no Evidence That Szerlong is Age Biased.

Considering the insignificant age difference between them, it is not surprising that Baillie admits there is no evidence that Szerlong disliked him because of his age.  In his deposition, Baillie described his relationship with Szerlong during the first six months of their reporting relationship as "very good."  *Id.* at 46.  He had no reason to think Szerlong was a detractor or out to get him, for any reason at all.  *Id.* at 48.

Throughout the entire time Baillie worked for Szerlong, he never heard Szerlong say anything negative about his age.  Nor did he see any documents that suggested age bias.  *Id.* at 106-107.

### D.    Szerlong's Reasons For Terminating Baillie are Well Documented.

Szerlong advised Baillie of his termination on August 24, 2001 primarily because he lost confidence in Baillie's leadership abilities.  Deposition of Timothy James Szerlong at 45-48 (hereinafter "Szerlong Depo."; copies of cited pages in Appendix as Exh. C).  Szerlong began to

---

[2]  In approximately January, 2001, Chubb reorganized its field operations and, as a result, Baillie no longer directly supervised the Indianapolis and Cleveland branch managers.  Deposition of Douglas W. Baillie Vol. I at 43 (hereinafter "Baillie Depo. Vol. I"; copies of cited pages in Appendix as Exh. B).

document these leadership deficiencies in early 2001, after the first full year he supervised Baillie. During Baillie's performance review for calendar year 2000, Szerlong made it clear that as a Regional Manager, Baillie was being judged against a tougher standard than in his prior positions. Baillie Depo. Vol. I at 63. Szerlong also emphasized that as a result of Chubb's unsatisfactory financial performance, all managers were being judged against a tougher standard and that future expectations would increase. *Id.*

Baillie admits that during the year 2000 review, Szerlong went over several general areas of perceived leadership deficiencies. Those deficiencies were memorialized in a "competency assessment" presented during the review and in follow-up memos Baillie received on March 9, and May 8, 2001. Included in these documented deficiencies were Baillie's failure to develop and evaluate his management staff; tendency to be "inflexible" or "black and white" in dealing with staff; need to "increase internal management engagement" and "instill a clear vision." Szerlong also criticized him concerning the unfavorable perception of his staff toward Baillie's meetings and the manner in which he dealt with an issue related to the function of Human Resources and the role of women in the workplace. Baillie Depo. Vol. I at 57, 64; Baillie Depo. Vol. I Exhibits 1, 2 and 3 (copies in Appendix as Exhs. D, E and F respectively). Baillie further admits that the overall rating he received during the performance review was "not a very good rating" for someone in his position. Baillie Depo. Vol. I at 59-60. In response to Szerlong's criticism during the performance review relating to staff development, Baillie replied, "I must be a great manager to be able to get the type of performance I get out of them." *Id.* at 64.

Moreover, prior to Baillie's termination, Szerlong followed up his criticisms with a meeting and additional memos to Baillie in early May 2001. Baillie Depo. Vol. I at 87-88; Exhibits 1, 2 and 3. In addition, soon after the May meeting, Szerlong criticized Baillie's

reported inappropriate behavior during a Chubb conference in Jamaica. Szerlong Depo. at 90-91; Baillie Depo. Vol. I at 87-88.

> E.   **Szerlong's Perceptions Regarding Baillie's Leadership Deficiencies Are Confirmed By the Sworn Testimony of Many of the Managers Who Reported to Baillie.**

During discovery, Baillie opted to depose many of the managers who previously reported to him during his tenure as Cincinnati Regional Manager. Most of those witnesses confirmed Szerlong's perceptions about Baillie's leadership deficiencies. Indeed, in several cases their assessment of Baillie's leadership was much harsher than Szerlong's.

**Diane Haggard ("Haggard"):** Haggard was the Regional Human Resource Manager, reporting directly to Baillie. She testified that Baillie failed to adequately develop and coach his staff and failed to communicate a clear business strategy. Deposition of Diane R. Haggard at 39, 42-43, 71-74, 162 (hereinafter "Haggard Depo."; copies of cited pages in Appendix as Exh. G). She received complaints about Baillie's leadership from many of the Cincinnati branch employees and supervisors. *Id.* at 70-71, 81, 98, 104, 143-144, 146, 147, 158, 162, 164. Her opinion of Baillie was much harsher than Szerlong's. She testified that Baillie made sexist comments and repeatedly engaged in other inappropriate and unprofessional conduct. *Id.* at 41-42, 111-112, 143-144.

**Greg Tazic ("Tazic"):** Tazic served as the Regional Claims Manager in the Cincinnati Branch during most of Baillie's tenure as Branch/Regional Manager. Deposition of Gregory W. Tazic at 11-12 (hereinafter "Tazic Depo."; copies of cited pages in Appendix as Exh. H). He testified that he "didn't think Doug . . . had the skills that it took to be a good Regional Manager or Branch Manager." *Id.* at 95. He swore Baillie did not support the claims department because he was not sufficiently engaged or involved. *Id.* at 91-92. He further opined that Baillie was not adequately engaged with the Branch's Diversity Committee, which Tazic co-chaired. *Id.* at 27,

30.   He recalled a specific comment Baillie made to the effect that companies that show flexibility to women in the workplace "usually end up going under." *Id*. at 25-26.

Tazic also was highly critical of Baillie's behavior during a "critical" underwriting meeting in which Baillie arrived late, read the newspaper, and left early. *Id*. at 46-47.  As another specific example of Baillie's  lack of leadership he recounted an important meeting of the entire Cincinnati branch for which Baillie was not prepared and in which he presented Powerpoint slides that he claimed to know nothing about. *Id*. at 61.  Tazic also recalled a meeting with a key Chubb agent to discuss a sensitive business issue. *Id*. at  72-76.  Before the meeting he and Baillie both agreed that the difficult message should and would be delivered to the agent by Baillie because he was the Branch Manager. *Id*. at 75.  However, as soon as the meeting began,  Baillie turned to Tazic and said, "[i]ts your show, go ahead." *Id*. at 76.

In summary, Tazic testified that Baillie's only strength as a manager was that "for a limited number of agents, he was fairly sociable with them, and that's a pretty small piece of the job." *Id*. at 87-88.

**Jim Lash ("Lash"):**   Lash was the Regional Manager of Chubb's Executive Protection business line.  He had worked for Baillie in Baillie's prior position as Chubb's Harrisburg, Pennsylvania Branch manager and describes himself as "very close" to Baillie.  Deposition of Jim Lash at 6-7, 34 (hereinafter "Lash Depo."; copies of cited pages in Appendix as Exh. I). Nevertheless, he confirmed that Baillie exhibited many of the leadership deficiencies perceived by Szerlong.  Lash swore that "people management" was not one of Baillie's skills. *Id*. at 30. He testified that Baillie did not coach and develop his people to the extent "a lot of [them] would have wanted" and as a result "some people got frustrated by that." *Id*. at 31-32.  He also

described Baillie as "very argumentative" and Baillie's communication skills as "mixed" *Id.* at 22, 16-17.

**Dieter Korte ("Korte"):**  Korte was the Regional Underwriting Manager.  Deposition of Dieter Wilhelm Wolfgang Korte at 7 (hereinafter "Korte Depo."; copies of cited pages in Appendix as Exh. J).  He also confirms Baillie's lack of leadership skills.  According to Korte:

> "I was disappointed about his lack of engagement in my business issues…. I was looking for more.  I was looking for more probably leadership.  I was looking for more maybe ability to listen, patience to listen.  There were probably times where I would have probably liked a little bit more support.  That's probably in a nutshell the best way I can summarize it."

*Id.* at 39-40.

As examples of Baillie's inadequate leadership, Korte described the important underwriting meeting in which Baillie read the newspaper and another meeting in which Baillie publicly ridiculed Korte's value to the company and his compensation.  *Id.* at 28-30.  Korte also swore Baillie emphasized revenue over profitability and resisted Chubb's corporate initiative to eliminate unprofitable business.  *Id.* at 67.  He described Baillie's support of underwriting as insufficient.  *Id.* at 72.

**Andrew Bryant ("Bryant"):**  Bryant was the manager of the Louisville production branch.  During his deposition, he criticized Baillie for, among other deficiencies, failing to convey a sense of direction and goals during staff meetings, communicating inconsistent instructions regarding agency plans, and focusing on revenue (premium) growth rather than profitability.  Deposition of Andrew Bryant at 13-14, 20-22, 45-48 (hereinafter "Bryant Depo."; copies of cited pages in Appendix as Exh. K).  When Bryant expressed concerns regarding these issues to Baillie, Baillie responded that Bryant should just do what Baillie directed.  *Id.* at 23.

**Jeff Barton ("Barton"):**  Barton was the Regional Marketing Manager and a "relatively good friend" of Baillie.  Deposition of Jeffrey Allen Barton at 31 (hereinafter "Barton Depo.";

copies of cited pages in Appendix as Exh. L). Nevertheless, his testimony also supports Szerlong's assessment of Baillie's leadership skills. According to Barton, Baillie's goals and strategies for the future were less defined than the current Cincinnati Branch manager. *Id.* at 30. Baillie's conflicting goals created a higher level of frustration in the branch than Barton would have expected. *Id.* at 27. Barton's perception was that Baillie's leadership style did not work for everybody. *Id.* at 17. He echoed Szerlong's criticism that Baillie was "too black and white." According to Barton, Baillie's directives sometimes alienated the staff. *Id.* at 39-40. Moreover, Baillie's "attention span was a little bit short at times, and I think sometimes he jumped to conclusions on some issues." *Id.* at 40.

**Mike Zdinak ("Zdinak"):** Zdinak served as the Regional Loss Control Manager under Baillie. Deposition of Michael Zdinak at 10 (hereinafter "Zdinak Depo."; copies of cited pages in Appendix as Exh. M). He testified that Baillie undercut his authority as a manager and adversely impacted the productivity of his department by interfering with, and overriding his directions to Loss Control employees. *Id.* at 15-16, 20-21. Baillie ignored Zdinak's complaints and insisted that Loss Control operate according to outdated procedures that had been in effect many years before when Baillie worked in loss control. *Id.* at 24-25, 34-35. Zdinak repeatedly complained to Human Resources and to the Zonal management about Baillie's leadership. *Id.* at 25, 29-32, 37, 43-44, 60.

**Tim Dadik ("Dadik"):** Dadik was the Regional Personal Lines Manager. Deposition of Timothy Dadik at 7 (hereinafter "Dadik Depo."; copies of cited pages in Appendix as Exh. N). It was Dadik's first position as a Chubb manager and he did not feel he received the support and development he expected from Baillie. *Id.* at 39. He swore Baillie was not adequately engaged with the branch's personal lines business, which comprised approximately a third of its total

premium revenue.  *Id.* at 27, 35.  According to Dadik, "[i]t was irritating to me that if I needed him, he was not around and not doing something that I perceived productive to supporting the branch growth and profit goals."  *Id.* at 38.  He further testified that Baillie was not adequately prepared for their performance review meetings;  lacked the skills necessary to understand the personal lines business; and repeatedly expressed his disagreement with Chubb's personal lines business strategy.  *Id.* at 15, 41, 45-46.  He had a difficult time recalling any of Baillie's strengths.  When pressed, Dadik swore that Baillie's only strength was that on a few occasions he provided useful suggestions.  *Id.* at 68.

**F.    The Branch/ Regional Financial Results Were Far From "Superior" During Baillie's Tenure.**

As explained above, Baillie was terminated because he did not meet Szerlong's expectations regarding leadership.  The financial performance of his branch was not the reason for his termination.  In his Amended Complaint, Baillie has focused primarily, if not exclusively, on the financial performance of his branch and/or region which he claims was "superior." During his deposition however, he admitted that his area of responsibility was far from profitable during his tenure.  He describes the region's financial performance during 1999, his first full year in Cincinnati, as "horrible."  Baillie Depo. Vol. I at 48.  In 2000 his region lost approximately $40 million dollars and he characterizes its financial performance as "just awful."  *Id.* at 156-157, 57-59, 54.  He conceded that the Harrisburg branch he managed before Cincinnati also was not profitable for two out of his last three years there.  *Id.* at 30-31.  In short, he conceded that the branches he managed lost money four out of his last five full years at Chubb.  He also admitted that his allegations of "superior" financial results related only to a portion of 2001.  *Id.* at 107-109.

**G.    After He is Informed of His Termination, Baillie Elects Not to Exercise His Vested Stock Options.**

As referenced above, Baillie was notified of his termination and relieved of his duties on August 24, 2001.  However, he was permitted to remain on Chubb's payroll as an employee for approximately five weeks, through October 1st.  During that period Chubb provided him with outplacement services and paid for him to attend an executive course at Wharton Business School.  Baillie Depo. Vol. I at 119.  As of August 24th Baillie had vested stock options worth approximately $300,000 which he  knew he was free to exercise through the October 1st official termination date.  Indeed, during the course of his employment, he had exercised some of his vested options.  *Id.* at 127-128.  Baillie admits that he continued to monitor Chubb's stock price from August 24th through October 1st because he held these valuable options.  *Id.* at 128.  When asked why he did not exercise them he initially testified the possibility had not "occurred" to him.  However, he then admitted it was because the "stock [price] was low."  *Id.* at 128.

**H.    Baillie Rejects Chubb's Initial  Settlement Proposal.**

It is important to note that Baillie concedes all of his discussions with Chubb regarding a severance package constituted "settlement discussions."  Amended Complaint at ¶¶ 22, 56.  He also admits that Chubb's written policies that were in effect during his employment expressly reserved the company's right to handle separation pay as it saw fit.  According to the policy, up to 52 weeks of severance pay – defined as "special severance pay" -- could be awarded in Chubb's discretion, but only if the employee "sign[s] a separation agreement acceptable to Chubb."  Deposition of Douglas Baillie Vol. II at 15, 17 (hereinafter "Baillie Depo. Vol. II"; copies of cited pages in Appendix as Exh. O); Baillie Depo. Vol. II Exhibits 35, 36 and 37 (copies in Appendix as Exhs. P, Q and R respectively).

Baillie was first presented with a written settlement proposal in the form of a separation agreement on September 5, 2001. He admits this first proposal was superior to the "special severance pay" package described in Chubb's written policy. Baillie Depo. Vol. II at 18-19; Baillie Depo. Vol. II Exhibit 27 (copy in Appendix as Exh. S). According to its terms, Chubb's first proposal expired, and would be "withdrawn" if not accepted on or before October 1, 2001. In both the separation agreement and the attached cover letter, Chubb specifically encouraged Baillie to consult with an attorney. (Baillie Depo. Vol. II Exhibit 27).

**I.     Baillie Twice Rejects Chubb's Enhanced Settlement Proposal.**

On September 15, 2001, Baillie's attorney requested an extension of the October 1st deadline. Chubb agreed to an extension and on October 3d, Chubb significantly enhanced its initial written proposal. Specifically, Chubb offered Baillie a pro rata distribution of a restricted stock award that would not otherwise have been available. Baillie Depo. Vol. II at 25; Baillie Depo. Vol. II Exhibit 39 (copy in Appendix as Exh. T). The estimated value of this additional consideration was approximately $90,000. Baillie Depo. Vol. II. at 25.

On October 9th, Baillie rejected the enhanced proposal and submitted a written counter-offer. According to his attorney's letter: "The compensation offered to [Baillie] is inadequate and the further requested compensation is warranted." As a counter-offer, Baillie proposed that Chubb's enhanced package be further improved by: (1) treating Baillie for pension purposes as if he worked another five years; (2) extending Baillie's health care coverage until he becomes eligible for alternative coverage; and (3) vesting Baillie in all of his restricted stock – rather than a pro rata share. *Id.* at 27-28; Baillie Depo. Vol. II Exhibit 40 (copy in Appendix as Exh. U).

Chubb declined Baillie's counter offer by letter dated October 11, 2001. Chubb offered, however, to keep it's enhanced settlement proposal open for another week, until October 18,

"after which our offer will be withdrawn." Baillie Depo. Vol. II. at 29; Baillie Depo. Vol. II
Exhibit 41 (copy in Appendix as Exh. V).

Baillie admits Chubb's October 18th deadline was never extended. Baillie Depo. Vol. II
at 30, 35. He further admits that he did not return the signed agreement or otherwise indicate his
acceptance of Chubb's enhanced offer, before it expired. Baillie Depo. Vol. II at 43,45.

To the contrary, on October 31, 2001 his counsel specifically rejected the enhanced offer
as "insufficient." In his rejection letter counsel specifically confirmed that Baillie had not signed
the proposal: "[i]f Mr. Baillie believed that the package was fair [he] would sign the agreement
and move on." *Id.* at 33; Baillie Depo. Vol. II Exhibit 42 (copy in Appendix as Exh. W). To
emphasize his rejection of Chubb's enhanced proposal, Baillie's counsel attached a draft
complaint to this letter and warned that a suit would be filed if Chubb did not reconsider within
10 days. *Id.* Baillie admits he knew Chubb's deadline had already expired when he authorized
his counsel to send this aggressive rejection letter. Baillie Depo. Vol. II at 33.

On November 20, 2001, Baillie's counsel again confirmed that no meeting of the minds
had occurred and that he had "not heard from Chubb." Baillie Depo. Vol. II Exhibit 43 (copy in
Appendix as Exh. X).

**J.**    **Baillie Purports to "Orally Accept" Chubb's Enhanced Settlement Offer
Long After It Expired and Was Rejected.**

Over two months after the October 18th deadline had passed, Baillie's counsel claimed in
a letter dated December 21, 2001, that Chubb's enhanced settlement offer had been "verbally
accepted" during a conversation between counsel in early December, 2001. Directly
contradicting his October 31st rejection letter, Baillie's counsel further claimed that Baillie had
signed the enhanced offer on October 18th. Baillie Depo. Vol. II Exhibit 44 (copy in Appendix
as Exh. Y). During his deposition Baillie swore that he and his attorney made a conscious

decision not to make Chubb aware that he had signed the proposal until months after Chubb's deadline had expired. Baillie Depo. Vol. II at 45, 47.

Further muddying the waters, Baillie testified that in his opinion a contract had been formed with Chubb as a result of the verbal discussions between counsel in early June, 2001. *Id.* at 48. However, the Amended Complaint contains no breach of contract claim and Baillie's counsel repeatedly has confirmed that no contract claim will be asserted. *Id.* at 48-49. Indeed, in addition to the many other hurdles Baillie would have to overcome to establish an oral contract (e.g. the expiration of Chubb's deadline, Baillie's unequivocal rejection of Chubb's enhanced offer, and the clear invalidity of an oral acceptance to an offer that required acceptance in writing), Baillie's trial counsel would have to disqualify himself so he could testify about his December, 2001 communications with Chubb's counsel. Baillie's counsel has repeatedly assured Chubb's counsel, and this Court that he will not be testifying.

### K.     Chubb Again Extends The Enhanced Settlement Offer and Baillie Again Rejects It.

Baillie admits that Chubb's enhanced settlement offer was extended to him yet a third time, after litigation commenced; and he again rejected it. Baillie Depo. Vol. II at 53-54. Incredibly, he takes the position that all of the prior "settlement discussions" should be admitted to prove his "promissory estoppel" and "retaliation" theories but this final offer and rejection should be excluded under Federal Rule of Evidence 408. *Id.* at 53. Apparently, Baillie believes the jury should punish Chubb for not allowing him to accept the enhanced proposal after it expired by its terms and after he repeatedly rejected it. However, he does not want the jury to know that he rejected it again when it was offered yet a third time.

### L.    Baillie Admits There Is No Admissible Evidence Of Defamation Or ERISA Violations.

During his deposition Baillie admitted he had no evidence to support his defamation or ERISA counts.

With respect to his ERISA claim, Baillie swore he had never heard or seen anything which supported any conclusion that he was terminated to prevent him from vesting in any Chubb benefits.  Baillie Depo. Vol. I at 109-110.

As to his defamation count, Baillie conceded it was based on Szerlong's opinions that were expressed in Baillie's performance documentation.  Baillie Depo. Vol. II at 67.  Further, he believes Szerlong and the current Cincinnati Branch manager may have made false statements about him.  However he did not witness these statements, he does not recall who told him about them, and he cannot provide any detail about what was said or the circumstances surrounding the statements.  *Id.* at 63, 67.

## IV. STANDARD OF REVIEW

Chubb is entitled to summary judgment because there is no genuine dispute as to the material facts.  *See* Federal Rule of Civil Procedure 56(c).  Once the moving party has met the initial burden of showing the absence of a genuine issue of material fact, summary judgment should be granted unless the non-moving party can "designate" *specific* material facts genuinely in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The non-moving party must present "affirmative evidence" in response to a motion for summary judgment.  *Street v. J.C. Bradford and Company*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

## V. ARGUMENT

### A.    Chubb Is Entitled To Summary Judgment On Plaintiff's Claims Of Age Discrimination Because Baillie Cannot Establish Pretext.

Chubb is entitled to summary judgment with respect to Baillie's age discrimination claims because the undisputed facts confirm that Baillie was terminated for a legitimate, non-discriminatory reason.

Once an employer articulates a non-discriminatory reason for an employee's termination the burden shifts to the employee to prove that the employer's explanation is a mere pretext for intentional age discrimination. *See Dews v. A.B. Dick Co*., 231 F.3d 10106, 1021 (6th Cir. 2000). In order to refute the employer's legitimate, non-discriminatory reason, the employee generally must prove that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's decision, or (3) was insufficient to warrant the challenged conduct. *Id*. Regardless of which of these options is utilized, "the [employee] retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the employer's] explanation and infer that the [employer] intentionally discriminated against him." *Johnson v. Kroger Co*., 319 F.3d 858, 866 (6th Cir. 2003).

An employer is not required to prove that its articulated reason for termination is accurate—only that it had a good faith belief, formulated through a reasonable reliance on particularized facts, for its employment decision. *See Bowie v. Advanced Ceramics Corp*., 2003 WL 21580406 (6th Cir. 2003) (copy in Appendix as Exh. Z).

Here, Chubb's reason for terminating Baillie is well documented and supported by the testimony of many witnesses. His supervisor, Szerlong, believed he lacked the leadership skills necessary to manage the Cincinnati branch. These deficiencies included his failure to develop and evaluate his management staff, his tendency to be inflexible in dealing with staff, the manner

in which he conducted meetings, and the manner in which he dealt with an issue relating to Human Resources and women in the workplace. Based on the testimony of many of the managers which Baillie opted to depose, it is clear that Szerlong's opinions were well grounded in fact and not by any stretch of the imagination a pretext. The witnesses confirmed the very same deficiencies noted by Szerlong. Baillie admitted there was no evidence suggesting Szerlong was age biased towards him.

Because Baillie is unable to rebut the employer's proffered reason for termination, Chubb is entitled to summary judgment as to Baillie's First Count for violation of the ADEA and Second Count for age discrimination under Ohio law. *See Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578 (1996) (Supreme Court of Ohio has adopted the same analytical framework utilized under ADEA and Title VII).

**B.    Chubb Is Entitled To Summary Judgment With Respect To Baillie's "Promissory Estoppel" And Retaliation Claims Because They Are Based On Inadmissible Settlement Discussions And Refuted By The Undisputed Facts.**

**1.    Unsuccessful Settlement Discussions Are Not Admissible and May Not Give Rise to Legal Claims.**

Initially, Baillie's claims for retaliation and promissory estoppel must be dismissed because they are based on inadmissible settlement discussions. Baillie's own Amended Complaint summarizes the alleged wrongful conduct as follows:

> After his termination, Plaintiff attempted to engage in **settlement discussions** with Defendant. Defendant advised Plaintiff that he deserved the "most aggressive package", a statement acknowledged by Defendant's Human Resources Department ('HR'). HR told Plaintiff that the offer was not the most aggressive and that HR was advised to give Plaintiff the "most aggressive" package. HR also promised to further negotiate "with [Plaintiff's] lawyers." Thereafter Defendant negotiated with Plaintiff in bad faith and attempted to coerce Plaintiff into signing a severance agreement that was not "the most aggressive" and would have required a general release of all claims against Defendant. Defendant knew at the time of its severance offer the consideration offered was substantially inadequate.

- 20 -

Amended Complaint at ¶ 56 (emphasis supplied).

The allegation is plainly about a settlement negotiation. Federal Rule of Civil Procedure 408 clearly prohibits the introduction into evidence of settlement offers and "conduct or statements made in compromise negotiations." *See, e.g., Southwest Nurseries, LLC v. Florists Mutual Insurance, Inc.*, 266 F. Supp.2d 1253 (D. Colo. 2003).

In *Southwest Nurseries*, an insured brought suit against its insurer under Colorado law for failing to make a good faith effort to settle and pay a claim. The plaintiff's amended complaint alleged that the defendant's settlement offers were unreasonably low and, therefore, presumptively evidence of bad faith. *Id.* at 1258. The district court held, however, that such evidence was inadmissible under Rule 408. As the Court pointed out, "settlement strategies are more the product of art than science, and fraught with the potential for misperception by all parties . . .. If an insurance company risks a bad faith claim for failing to make a settlement offer deemed acceptable by the insured, then the price of peace becomes total capitulation." *Id.* at 1258-59. Moreover, the court reasoned that permitting evidence of unsuccessful settlement negotiations would create a very real potential for juror confusion that may suggest a decision on an improper basis. *Id; see also Vanguard Insurance Company v. Havadjia*, 886 F.2d 1321 (9th Cir. 1989) (In cases asserting bad faith claims, trial court properly excluded evidence of insurers settlement offers); *Bower v. Steinerikson Lodge Owners Association, Inc.*, 201 F.2d 1134, 1139-40 (D. Utah 2002) (in excluding evidence of settlement negotiations, Court rejected defendant's argument that declarations merely offered to prove plaintiff's bad faith).

Here, the rationale for prohibiting the introduction of settlement discussions is far more compelling than in *Southwest Nurseries* and the other insurer bad faith cases cited above. This is not an insurer bad faith claim and there is no law requiring that employers exercise good

faith in negotiating severance packages.  Indeed, in its policies, Chubb specifically reserved the right to handle severance packages as it saw fit.  Based on Baillie's testimony and the correspondence exchanged during negotiations, it is clear that Baillie was offered far more in severance than the policies permitted.  After Baillie rejected Chubb's initial offer, Chubb enhanced it by approximately $90,000 in value.  When Baillie first rejected the enhanced proposal, Chubb re-extended the offer and gave Baillie even more time to accept it.  Baillie deliberately allowed the October 18, 2001 deadline to expire and then authorized his counsel to specifically reject it in writing  as "insufficient."  Indeed, Baillie admits he intentionally misled Chubb when his counsel claimed in the letter of October 31, 2001 that he had not signed Chubb's offer.

There is no authority from any jurisdiction even remotely suggesting that Chubb's conduct during these unconsummated "settlement discussions" is actionable or admissible. Admitting them into evidence would seriously confuse the jury and potentially prejudice it against Chubb.  The jury could assume Chubb was liable because it extended Baillie a substantial offer.  Alternatively, the jury could be inclined to award Baillie the package he previously rejected based on the rationale that Chubb had been willing to extend it previously.  This is exactly the type of confusion and potential prejudice Rule 408 is designed to avoid.

Pursuant to Federal Rule of Evidence 408, the "settlement discussions" are not admissible and may not be used to support Baillie's "promissory estoppel" or "retaliation" theories.  As such there is no admissible evidence supporting these counts and Chubb is entitled to summary judgment.

      2.     **Baillie's Promissory Estoppel Claim is Refuted by the Undisputed Facts.**

Alternatively, Baillie's "promissory estoppel" claim must be dismissed because it is refuted by the undisputed facts, including Baillie's deposition testimony.

In order to establish a claim for promissory estoppel, Baillie must show "[a] promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Talley v. Teamsters Local No. 377*, 48 Ohio St.2d 142, 146 (1976) (quoting and adopting Restatement of the Law, Contracts 2d (1973), Section 90). "In order to prove a case of promissory estoppel under Ohio law, a plaintiff must demonstrate the following elements: (1) a promise, clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance that is reasonable and foreseeable; and (4) injury caused by the reliance." *Dietz-Britton v. Smythe, Cramer Co.*, 139 Ohio App.3d 337, 351 (2000) (quoting *Weiper v. W.A.Hill & Assoc.,104 Ohio App.3d 250, 260 (1995)*) Baillie can establish none of these elements.

In this case, Chubb's written policies regarding severance pay alone destroy any promissory estoppel claim. The policy specifically provides Chubb with complete discretion concerning severance packages and negotiations. It further provides that up to 52 weeks of "special severance" may be awarded in Chubb's discretion but only if the recipient signs a separation agreement acceptable to Chubb. It is undisputed that Baillie was treated far more favorably than the policy requires. Under these circumstances, Baillie's allegation that he justifiably relied on some vague comment by Szerlong defies all logic.

Even in the absence of the unequivocal written policy, Baillie could not establish a promissory estoppel claim. The only "promise" which Baillie has ever cited is Szerlong's

- 23 -

alleged reference to a "most aggressive" package. Baillie Depo. Vol. II at 9. During his deposition, Baillie conceded that Szerlong's alleged "promise" had no definite meaning and that Baillie's interpretation of "most aggressive" is based entirely on "supposition." Baillie Depo. Vol. II at 12. As such, it is far from "clear and unambiguous" and cannot support a claim. *See, e.g., Sheets v. Rockwell Internatl. Corp.*, 68 Ohio App.3d 345, 351-52 (Ohio.App.10.Dist. 1990) (allegation that employer promised supervisor he would receive full retirement and be treated in fair and equitable manner was insufficient to support promissory estoppel claim); *see also Hill v. Christ Hosp.*, 131 Ohio App.3d 660, 668 (Ohio.App.1. Dist. 1998) (promise must be specific to support claim for promissory estoppel); *see also Weiper v. W.A. Hill & Assoc.*, 104 Ohio App.3d 250, 260 (Ohio.App.1. Dist. 1995) (absent evidence of *specific* promises of continued employment, employee's subjective understanding of statements which were in the nature of general praise was insufficient to create inference of continued employment upon which to assert promissory-estoppel exception to employment-at-will doctrine) (emphasis added); *see also Condon v. Body, Vickers & Daniels*, 99 Ohio App.3d 12, 19 (Ohio App. 8 Dist. 1994) (holding that employer's statement during initial interview that firm was looking for an associate but did not include a *specific* promise of a five-year term of continued employment did not support claim for promissory estoppel) (emphasis added). *Weiper*, 104 Ohio App.3d 250, 260 (1995)).

Moreover, any allegation that Baillie relied on Szerlong's vague reference is also contradicted by the facts. Indeed, after his discussions with Szerlong Baillie hired an attorney and authorized the attorney to negotiate with, and threaten litigation against, Chubb. This is hardly the type of "reliance" contemplated by the case law.

Baillie's Fifth Count for promissory estoppel is not supported by the law or facts and should be dismissed.

**3.    Baillie's "Retaliation" Claim is Also Refuted By the Undisputed Facts**

Baillie's claim that Chubb retaliated against him because he hired an attorney is also directly refuted by the uncontroverted facts.  In order to prevail on a retaliation theory under Ohio law, Baillie must establish, among other elements, that Chubb took an adverse employment action against him and that there is a casual connection between the alleged protected activity – retaining a lawyer -- and the adverse action.  *See High v. Genting/Castle, Inc.*, 2002 WL 31951256, at *17 (S.D. Ohio 2002) (citing *Peterson v. Buckeyes Steel Casting*, 133 Ohio App 3d 715, 727 (Ohio App. 10 Dist. 1999))(copy in Appendix as Exh. AA).  Thus, in *Genting/Casting*, this court rejected a retaliation claim and granted the employer's motion for summary judgment under circumstances virtually identical to those presented here.  Like Baillie, the plaintiff had retained counsel after rejecting the employer/defendant's initial severance offer.  During the ensuing negotiations the employer improved its prior offer.  Under these circumstances the court concluded that the plaintiff's "allegations that he was retaliated against because he retained a lawyer is not casually supported by the evidence." *Id.*

Similarly, Baillie can establish no casual relationship between his retention of counsel and any adverse action.  Indeed, it is undisputed that Chubb specifically encouraged Baillie to retain counsel at the same time it presented him with the initial settlement offer in early September, 2001.  Baillie admits that after he retained counsel, Chubb significantly improved it's initial written proposal by offering him $90,000 worth of additional consideration in the form of restricted stock.  Thereafter, Chubb extended the deadline for Baillie to accept the enhanced offer at least twice before this lawsuit was filed and Chubb re-extended the enhanced proposal to Baillie after this litigation commenced.

Chubb is entitled to summary judgment with respect to Baillie's Third Count for retaliation.

**C.    Chubb is Entitled to Summary Judgment With Respect to Baillie's ERISA Count Because He Admits There is No Evidence of Any Violation.**

Baillie's Sixth Count for violation of ERISA Section 510 must be dismissed because there is no evidence supporting his allegations.

To state a prima facie case under Section 510, "an employee must show that there was: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir. 1996) (quotation omitted).  Thus, the employee "must show that an employer had a specific intent to violate ERISA."  *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir. 1991).  To survive summary judgment on his Section 510 claim, Baillie must produce evidence from which a reasonable jury could find that Chubb's desire to avoid pension liability was a determining factor in its termination decision.  *Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000).  If a loss of benefits was merely a consequence of, as opposed to a determining factor behind, the decision, then Baillie's claim must fail.  *Brink v. Union Carbide Corp.*, 41 F.Supp.2d 406 (S.D.N.Y. 1999).

For example, in *Rogic v. Mallinckrodt Medical, Inc.*, 917 F.Supp. 671 (E.D.Mo. 1996), a former employee brought an action against his former employer alleging age discrimination under the ADEA and that his termination was intended to interfere with the attainment of retirement and other employee benefits to which he was entitled under ERISA.  The appellate court held, however, that the employee failed to present evidence of causal connection between his membership in ERISA-qualified plan and his discharge and, therefore, failed to establish prima facie case that interference with his pension benefits was the motivating factor in the decision to discharge him.  *Id.* at 681.  The employee had argued that he was discharged within two years of reaching 65, when his retirement benefits may have been larger.  According to the

court, an ERISA cause of action had not been established as the employee was fully vested in all benefits which he accrued and none of his benefits were forfeited upon termination of employment. *Id.* As the court stated, "plaintiff's claim that he may have received larger benefits when he reached the age of sixty-five does not state a cause of action under ERISA." *Id. See also Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987) ("Proof of incidental loss of benefits as a result of termination will not constitute a violation of § 510); *Corum v. Farm Credit Servs.*, 628 F.Supp 707, 718 (D.Minn. 1986) (plaintiff must show more then "lost opportunity to accrue additional benefits" to sustain § 510 claim); *Baker v. Kaiser Aluminum & Chem. Corp.*, 608 F.Supp. 1315, 1319 (N.D.Cal. 1984) ("The only evidence offered by plaintiff is that if he had not been terminated, he would have been able to accrue additional benefits.").

In this case Baillie admits there is no evidence suggesting his termination was motivated by Chubb's desire to avoid pension liability. Baillie Depo. Vol. I at 109-110. Consequently, Chubb is entitled to summary judgment with respect to his Sixth Count as well.

### D.    Plaintiff's Public Policy Claims Are Derivative Of His Other Claims And Fail For The Same Reasons.

Baillie's Fourth Count, entitled "Public Policy" simply incorporates his allegations of age discrimination, retaliation, and the ERISA violation and claims that his termination also violates Ohio public policy. Amended Complaint at ¶¶ 47-51. Because these claims are derivative of his other unsupported claims, Chubb also is entitled to summary judgment as to this count. *See Fenton v. HiSan, Inc.*, 174 F.3d 827, 834 (6th Cir. 1999).

### E.    Plaintiff Has No Admissible Evidence of Actionable Defamation.

Baillie's Seventh Count for defamation also must be dismissed because there is no evidence of any actionable defamation. The Amended Complaint does not describe any defamatory statements and during his deposition, Baillie struggled to recall any false statements

published by any Chubb agent about him or his character.  He believes Szerlong may have made a false statement during the announcement of Baillie's termination.  Baillie Depo. Vol. II at 63-65.  He also thinks his replacement, Butler, might have made untrue statements about Baillie's alcohol consumption.  *Id.* at 67-68.   However, he concedes that his suspicions concerning Szerlong and Butler's statements are based on hearsay.  Baillie does not recall who provided him with the information and he does not know what may have been said or any of the underlying details.  *Id*. at 63-65, 67-68.

Baillie could not recall any other false statements about him published by any Chubb employees or agents, other than possibly during depositions in this case.  *Id.* at 71.  Such deposition testimony is clearly not included in his Amended Complaint, which addresses only statements made during his employment at Chubb.   Moreover, statements published during depositions are covered by an absolute privilege.  *See e.g., Snyder v. Ag Trucking, Inc.*,  57 F.3d 484 (6th Cir. 1995); citing *Hecht v. Levin*, 66 Ohio St.3d 458 (1993) ("A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears."); *Fallang v. Cormier*, 63 Ohio App.3d 450, 452 (Ohio App. 12 Dist. 1989) (holding that "[t]he absolute privilege that applies to trial and deposition testimony likewise extends to communications involving pending litigation as between parties, counsel and potential witnesses.").

Baillie's Seventh Count for defamation is not supported by any evidence and must be dismissed.

**F.    Chubb is Entitled to Summary Judgment With Respect to Any Claim that Baillie Was Damaged by His Decision Not to Exercise Valuable Stock Options.**

Chubb is entitled to summary judgment on any claim that Baillie may attempt to assert that he was damaged because he failed to exercise his stock options.  Baillie was notified of his termination on August 24, 2001 but remained on the payroll until October 1.  It is undisputed that Baillie could have exercised his stock options at any time prior to his termination on October 1st.  Baillie knew perfectly well that he could exercise his options during this period:  he had previously exercised options and admits that he monitored the stock price during these last five weeks.  Baillie Depo. Vol. I at 127-128.  He made a choice not to exercise these options because, in his words, "the stock price was too low."  *Id.* at 128.  Baillie cannot assert a damages claim for failure to exercise the options because his loss stems from his decision not to exercise the options,  not from his termination.  *See, e.g., Nance v. Maxwell Federal Credit Union (MAX)*, 186 F.3d 1338, 1341-42 (11th Cir. 1999) (reversed the back pay, front pay, and fee awards for ADEA plaintiff after holding that any losses suffered by plaintiff were the result of her own choices).

**G.    Chubb is Entitled to Summary Judgment on Baillie's Claims for Punitive Damages      Under Ohio Law.**

As demonstrated above, Baillie has no actionable claims and  Chubb is entitled to summary judgment on every claim in Baillie's amended complaint.  But if this court should somehow conclude that one or more of  Baillie's claims survive summary judgment, it should still grant summary judgment in favor of Chubb on Baillie's state law claims for punitive damages.

Baillie asserts a variety of claims under Ohio law and  seeks punitive damages.  Under Ohio law, however, punitive damages are only available in a limited set of circumstances.  A

- 29 -

plaintiff must prove by "clear and convincing evidence"  actions of the defendant that "demonstrate malice, aggravated or egregious fraud, oppression, or insult. . . ."  O.R.C. § 2315.21.  _See also_ *Rice v. CertainTeed Corp.,* 84 Ohio St.3d 417, 421-22 (1999) (holding that award of punitive damages in civil actions brought pursuant to Ohio employment discrimination statute requires evidence of actual malice); _see also_ *Toole v. Cook,* 1999 WL 280804, (Ohio App. 10 Dist. 1999) (holding that in discrimination cases, as in other types of civil actions, the burden is on the plaintiff to establish actual malice by clear and convincing evidence per O.R.C. § 2315.21) (copy in Appendix as Exh. AB).  Actual malice for the purposes of awarding punitive damages is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473 (1991).

There is no evidence of actual malice in the record.  To the contrary, the record demonstrates that Chubb and Szerlong treated Baillie professionally and with courtesy during and after his termination:  it kept him on the payroll for several weeks, helped him with outplacement services and even paid for additional training at the Wharton School of Business. Baillie in his deposition said that Szerlong was professional and businesslike during the termination.  Baillie Depo. Vol. I. at 95.

Plaintiff's claims for punitive damages should be dismissed.

## VI. CONCLUSION

Based upon all of the foregoing, Chubb is entitled to summary judgment on all of Baillie's claims.

Respectfully submitted,


s/  David K. Montgomery
David K. Montgomery (0040276)
Mark J. Chumley (0067321)
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio  45202
(513) 579-6563
(513) 579-6457 - Facsimile
Attorneys for Defendant,
Chubb & Son Insurance Co.

OF COUNSEL:

KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio  45202
(513) 579-6400


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to Randolph H. Freking and Mark W. Napier, attorneys for Plaintiff, this 15th day of  September, 2003.


s/ David K. Montgomery
David K. Montgomery


1144324.14

- 31 -