1128600 / 143091

FILED
KENNETH J. MURPHY
CLERK

02 AUG 21  AM 10: 31

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DOUGLAS W. BAILLIE          :    Case No. C-1-02-062
                            :    J. Spiegel
            Plaintiff,      :
                            :
    v.                      :    **PLAINTIFF'S FIRST AMENDED**
                            :    **COMPLAINT WITH JURY**
CHUBB & SON INSURANCE       :    **DEMAND ENDORSED HEREON**
                            :
            Defendant.      :

Judge 4812
Mag.
Journal
Issue
Docketed

Plaintiff Douglas W. Baillie, complaining of Defendant Chubb & Son Insurance,

alleges as follows:

### PARTIES

1.      At all relevant times, Plaintiff Douglas W. Baillie was a resident and citizen of

Hamilton County, Ohio.  Mr. Baillie was employed by Defendant for approximately 26 years

before his abrupt termination in September, 2001 for false performance related reasons.  At the

time of his termination, Plaintiff was employed in Hamilton County, Ohio.

2.      Defendant Chubb & Son Insurance is one of the largest insurance companies in

the world.  Defendant does business within Hamilton County, Ohio.  Defendant is an employer

within the meaning of federal and state law.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332

because complete diversity of citizenship exists between the parties and the amount in

controversy exceeds $75,000.00.

9

Exhibit A

4.      The Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. §1331 because Plaintiff's Count I arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq. and Plaintiff's Count VI arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132(a)(1)(B).

5.      This Court also has supplemental jurisdiction over Counts II, III, IV, V and VII pursuant to 28 U.S.C. §1367 on the grounds that they are so related to Counts I and VI , over which the Court has original federal question jurisdiction, that they form part of the same case or controversy.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 and 29 U.S.C. §1132(e)(2) because Plaintiff was employed in this division and district and a substantial amount of the conduct giving rise to Plaintiff's claims occurred within this division and district.

7.      Plaintiff has received a Notice of Right to Sue from the Equal Employment Opportunity Commission.

## FACTUAL ALLEGATIONS

8.      Plaintiff was born on June 18, 1950.

9.      Plaintiff began his employment with Defendant on September 30, 1975.

10.     Plaintiff held the position of Regional Branch Manager - Cincinnati for approximately three years.

11.     Plaintiff was fully qualified for his position at all relevant times.

12.     Plaintiff was a loyal and dedicated employee during his tenure with Defendant.

13.     Prior to being notified of his abrupt termination on August 27, 2001, Plaintiff was performing well as the Regional Branch Manager - Cincinnati.  As manager in the "Northern

2

Zone", he was ahead of other managers within the zone in terms of profit, growth, and other goals.

14.    The financial results of Plaintiff's group were superior and Defendant had previously stated on a consistent basis that financial results of a branch were a Manager's top priority. The financial results of a particular branch for Defendant normally constitute 75% of a person's overall performance evaluation, and Plaintiff was meeting or exceeding his goals. Plaintiff was meeting or exceeding all of his target goals in the remaining areas, constituting 25%.

15.    Beginning in February, 2001, Defendant began to create a paper trail to "justify" the unlawful treatment of Plaintiff on account of his age and in order to avoid the further vesting of valuable employee benefits. Prior to a review on March, 2001, Plaintiff's supervisor never communicated any problems with Plaintiff's performance.

16.    The paper trail created by Defendant, through its agent, Tim Szerlong, was riddled with untrue allegations against Plaintiff, allegations Plaintiff demonstrated to Defendant were untrue. Szerlong intentionally presented an unbalanced view of Plaintiff's performance.

17.    During the last several years of his employment, Plaintiff's performance was superior to that of younger employees who were similarly situated to Plaintiff.

18.    By terminating Plaintiff for illegal reasons, Defendant was allowed to retain younger, less qualified employees. Mr. Szerlong admitted that the performance evaluation was "one sided..." Nonetheless, Plaintiff's profit, growth, and new business remained strong in the branch and his leadership remained strong, consistent with employee feedback that Plaintiff had received in 1999 and 2000 that had rated him highly in the area of leadership. Szerlong had accused Plaintiff of failing in the area of leadership. Plaintiff's leadership resulted in consistent

3

grown and rapid turnaround of the Cincinnati branch book of business, resulting in millions of dollars of profit for Chubb in 2001 and beyond.

19.    Plaintiff's job responsibilities have been assumed by a younger, lesser experienced individual.

20.    At the time of his termination, Plaintiff was one of the oldest branch managers (perhaps the oldest) in the Zone. Plaintiff's performance at the time of his termination was superior to that of younger counterparts.

21.    Defendant abruptly and wrongfully communicated the termination of Plaintiff's employment on or about August 27, 2001. This termination has caused Plaintiff to lose substantial monetary benefits of his employment, in an amount exceeding two million dollars. In addition, Plaintiff has suffered substantial emotional distress damages. Plaintiff believes that such damages will continue in the foreseeable future.

22.    After his termination, Plaintiff attempted to engage in settlement discussions with Defendant. Defendant advised Plaintiff that he deserved the "most aggressive package," a statement acknowledged by Defendant's Human Resources Department ("HR"). HR told Plaintiff the offer was not the most aggressive and that HR was advised to give Plaintiff the "most aggressive" package. HR also promised to further negotiate "with your lawyer." Thereafter, Defendant negotiated with Plaintiff in bad faith and attempted to coerce Plaintiff into signing a severance agreement that was not "the most aggressive" and would have required a general release of all claims against Defendant. Defendant knew at the time of its severance offer the consideration offered was substantially inadequate.

23.    Defendant negotiated with Plaintiff in bad faith because Plaintiff retained an attorney, and Plaintiff attempted to negotiate with Defendant to receive a fair package in light of

4

the request by Defendant to release all potential claims. Plaintiff's potential claims include the claims that are now the subject of this lawsuit.

24.      Plaintiff advised Defendant that Defendant may have committed age discrimination against Plaintiff.

25.      After securing other employment, Plaintiff returned a signed severance agreement to Defendant.

26.      Defendant refused to honor the signed agreement because Plaintiff had hired an attorney and attempted to negotiate a fair package.

27.      Defendant's conduct was willful and malicious, and intended to benefit Defendant at the expense of Plaintiff.

## COUNT I

### (Age Discrimination - ADEA)

28.      Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

29.      Plaintiff was born on June 8, 1950.

30.      Plaintiff was over the age of 40 at the time of his termination.

31.      Plaintiff's termination permitted the hiring and retention of younger employees.

32.      Defendant's actions in intentionally, willfully and wantonly discriminating against Plaintiff include, but are not limited to, treating Plaintiff differently than similarly situated younger employees and terminating Plaintiff's employment because of his age, in violation of the Age Discrimination in Employment Act ("ADEA").

33.      As a result of Defendant's unlawful conduct, Plaintiff has been injured and is entitled to judgment against Defendant in an amount to be proven at trial.

## COUNT II

### (Age Discrimination - O.R.C. §4112)

34. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

35. Plaintiff was born on June 8, 1950.

36. Plaintiff was over the age of 40 at the time of his termination.

37. Plaintiff's termination permitted the hiring and retention of younger employees.

38. Defendant's actions in intentionally, willfully and wantonly discriminating against Plaintiff include, but are not limited to, treating Plaintiff differently than similarly situated younger employees and terminating Plaintiff's employment because of his age, in violation of Chapter 4112 of the Ohio Revised Code.

39. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment pursuant to Ohio Revised Code §§4112.02 and 4112.99, in an amount to be proven at trial.

## COUNT III

### (Retaliation - O.R.C. §4112)

40. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

41. Defendant unlawfully retaliated against Plaintiff in violation of Chapter 4112 because he asserted potential legal claims against Defendant, including a claim of age discrimination.

42. Defendant actions were willful, wanton and malicious in nature, and constituted unlawful retaliation in violation of Ohio Revised Code §4112.02.

43.    Defendant conduct directly and proximately caused Plaintiff to suffer damages and Plaintiff is entitled to judgment under Ohio Revised Code §§4112.02 and 4112.99.

44.    As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment in an amount to be proven at trial.

## COUNT IV

### (Ohio Public Policy)

45..   Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

46.    There are clear public policies in both state and federal law that employee should not be subject to age discrimination.

47.    Discriminating against an employee on the basis of his age would jeopardize these clearly established public policies.

48.    There are clear public policies in both state and federal law that employee should not be subject to retaliation for hiring a lawyer.  Defendant specifically advised Plaintiff of his right under federal law to consult an attorney.

49.    Retaliating against an employee for hiring a lawyer would jeopardize these clearly established public policies.

50.    Defendant was motivated in its termination of Plaintiff by a desire to avoid the further accumulation and further vesting of valuable employee benefits by Plaintiff.

51.    Ohio public policy prohibits the wrongful conduct of Defendant that was designed to avoid the further accumulation and vesting of valuable employee benefits.

52.    Defendant's above-described actions violate these established public policies, and Defendant lacked an overriding, legitimate business justification for its actions.

7

53.    Defendant's actions constitute a breach of public policy and are willful, wanton, and malicious in nature.

54.    As a result of Defendant's unlawful conduct in violation of Ohio public policy, Plaintiff is entitled to damages in an amount to be proven at trial.

## COUNT V

### (Promissory Estoppel)

55.    Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

56.    After his termination, Plaintiff attempted to engage in settlement discussions with Defendant. Defendant advised Plaintiff that he deserved the "most aggressive package," a statement acknowledged by Defendant's Human Resources Department ("HR"). HR told Plaintiff the offer was not the most aggressive and that HR was advised to give Plaintiff the "most aggressive" package. HR also promised to further negotiate "with [Plaintiff's] lawyers." Thereafter, Defendant negotiated with Plaintiff in bad faith and attempted to coerce Plaintiff into signing a severance agreement that was not "the most aggressive" and would have required a general release of all claims against Defendant. Defendant knew at the time of its severance offer the consideration offered was substantially inadequate. .

57.    Plaintiff reasonably and justifiably relied on Defendant's promises.

58.    Defendant knew or reasonably should have known that Plaintiff would rely on its promises.

59.    In reliance on the promise of Defendant, Plaintiff unsuccessfully attempted to negotiate with Defendant to receive the "most aggressive package."

60.    Thereafter, Defendant refused to honor even its original offer.

61.    As a result of Defendant's breach of its promise, Plaintiff is entitled to damages in an amount to be proven at trial.

## COUNT VI

### (ERISA)

62.    Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

63.    Defendant's conduct violated Section 510 of the Employment Retirement Income Security Act. As a result of Defendant's unlawful conduct in violation of ERISA, Plaintiff is entitled to damages in an amount to be proven at trial.

## COUNT VII

### (Defamation)

64.    Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

65.    During the last year of Plaintiff's employment, Defendant's agent or agents published false statements about Plaintiff.

66.    At the time of the publication of the statements, Defendant and/or its agent(s) knew that the statements were false and acted with a reckless disregard as to whether the statements were false.

67.    Defendant's statements constitute defamation and Plaintiff is entitled to damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(a)    That Defendant be enjoined from further unlawful conduct as described in the Complaint;

(b)     That Plaintiff be reinstated to his employment;

(c)     That Plaintiff be awarded all lost pay and benefits;

(d)     That Plaintiff be awarded compensatory damages;

(e)     That Plaintiff be awarded punitive damages;

(f)     That Plaintiff be awarded liquidated damages;

(g)     That Plaintiff be awarded pre-judgment interest;

(h)     That Plaintiff be awarded reasonable attorneys' fees; and

(i)     That Plaintiff be awarded all other legal and equitable relief to which he may

be entitled.

Respectfully submitted,

Randolph H. Freking (0009158)
Mark W. Napier (0019700)
Trial Attorneys for Plaintiff
FREKING & BETZ
215 East Ninth Street, Fifth Floor
Cincinnati, OH 45202
Phone: (513) 721-1975
Fax: (513) 651-2570

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon David Croall, Esq.,

Frost Brown Todd LLC, 2200 PNC Center, 201 East Fifth Street, Cincinnati, OH 45202-4182,

by regular U.S. Mail this 17th day of June, 2002.

11