```
 1            IN THE UNITED STATES DISTRICT COURT
 2                 SOUTHERN DISTRICT OF OHIO
 3                      WESTERN DIVISION
 4   DOUGLAS W. BAILLIE,          )
 5            Plaintiff,          )
 6      vs.                       ) No. C-1-02-062
 7   CHUBB & SONS INSURANCE,      )
 8            Defendant.          )
 9
10            The deposition of TIMOTHY JAMES SZERLONG,
11   called for examination, taken pursuant to the
12   Federal Rules of Civil Procedure of the United
13   States District Courts pertaining to the taking of
14   depositions, taken before ZONA B. MILLER, a Notary
15   Public within and for the County of Lake, State of
16   Illinois, and a Certified Shorthand Reporter of
17   said state, at Suite 6150, 233 S. Wacker Drive,
18   Chicago, Illinois, on the 19th day of August, A.D.
19   2003, at 10:17 a.m.
20
21
22
23                                              COPY
24
```

Exhibit C

ESQUIRE DEPOSITION SERVICES   LINKING TESTIMONY, TRADITION AND TECHNOLOGY
Chicago: 312.782.8087 • 800.708.8087 • Fax 312.704.4950

```
 1      Q.    Anything else?
 2      A.    No.
 3      Q.    Let's direct your attention to the
 4  people management.  That's why you fired him was
 5  because of people management?
 6      A.    That's one of the reasons.
 7      Q.    What were the other reasons?
 8      A.    Doug was having an extremely difficult
 9  time in people management differentiating
10  effectively in dealing with performance of key
11  people, dealing with effectively communicating and
12  providing leadership and balanced direction to all
13  levels of staff under his command.
14      Q.    You're talking about people management?
15      A.    No.
16      Q.    Oh.  Those are separate and apart from
17  people management --
18      A.    Yes.
19      Q.    -- what you just identified?
20      A.    Yes.
21      Q.    He's having trouble --
22      A.    I think leadership.
23      Q.    You're telling me -- in the Chubb way
24  of doing things, does the quality of leadership
```

```
 1   fall under people management or someplace else?
 2        A.    It falls in a variety of areas.
 3        Q.    Okay.  Anything else?  Any other reason
 4   why you fired Mr. Baillie other than what you've
 5   already identified?
 6        A.    Doug's responses to my direction and
 7   coaching were unresponsive and he ultimately lost
 8   my confidence and trust.
 9        Q.    Anything else?
10        A.    No.
11        Q.    He lost your confidence and trust by
12   way of his responses to your attempts to coach
13   him?
14        A.    He lost my confidence and trust by a
15   combination of a failure to act on issues that we
16   had discussed that required attention and in some
17   cases the way in which he chose to act on other
18   items were incomplete or ineffective.
19        Q.    Any other way in which he lost your
20   confidence and trust?
21        A.    Only the areas that I touched on
22   earlier have an effect on that confidence level as
23   well.  In terms of the communication with staff,
24   the ability to deliver a balanced organizational
```

```
 1   message to the people under his charge, that
 2   certainly influences that judgment.
 3       Q.   What issues did he fail to act on that
 4   made you lose confidence and trust in him?
 5       A.   His inability to deal with issues of
 6   performance with several key lieutenants that had
 7   clear-cut performance problems.
 8       Q.   Anything else?
 9       A.   The slow and ineffective engagement in
10   managing issues in the Louisville production
11   office.
12       Q.   Anything else?
13       A.   I believe his judgment that he
14   exercised of the choices that he made in the
15   forums he would choose to given issues in the
16   presence of others.
17       Q.   Anything else?
18       A.   Doug had a very difficult time
19   sometimes interpreting and understanding strategy
20   and corporate directive and then effectively
21   executing and communicating that within his
22   branch.
23       Q.   Kind of like the corporate directive,
24   to put more emphasis on profitability rather than
```



ESQUIRE DEPOSITION SERVICES

LINKING TESTIMONY, TRADITION AND TECHNOLOGY

Chicago: 312.782.8087 • 800.708.8087 • Fax 312.704.4950

1  in other areas of an employee's performance?
2     A.   I would not use that as an example.
3     Q.   Anything else?
4     A.   No.
5     Q.   What were the lieutenants that he had
6  that had these issues of performance that you say
7  he failed to act on?
8     A.   Michael Whitman, Andrew Emery,
9  Tom Gates, Andy Bryant, Rick O'Brien.  Those are
10 the primary names.
11    Q.   Are there any secondary names that you
12 know of?
13    A.   I don't recall.
14    Q.   What did you do about the performance
15 issues of Whitman when you took over the branch?
16    A.   I didn't take over the branch.
17    Q.   Who assumed the responsibility for the
18 branch when Mr. Baillie left?
19    A.   Jerry Butler.
20    Q.   Mr. Butler came in like on
21 September 1st or 2nd.
22    A.   Shortly after Doug was terminated.  I
23 don't recall the date.
24    Q.   Who was in charge of the branch in the

1  A.  It was brought to my attention by
2  Jim Ekdahl that he had been boasting about an
3  automobile accident that occurred while driving a
4  company vehicle in his former assignment in
5  Pennsylvania and that alcohol had been involved in
6  that and that he was sharing those stories with
7  staff in Cincinnati.
8  Q.  After you heard this from Ekdahl, did
9  you say anything to Baillie about it at all?
10  A.  Jim Ekdahl gave me the impression that
11  it had been dealt with by human resources locally
12  and Ms. Haggard had spoken with him about it.
13  Q.  The answer is no, you hadn't spoken to
14  him about it?
15  A.  No.
16  Q.  Any other experiences about alcohol
17  involving his judgment?
18  A.  I did address an issue with Doug upon
19  an incident that was brought to my attention that
20  occurred at an MVI meeting, I believe, in Jamaica,
21  if my memory is correct, whereby Doug was observed
22  to be arguing in a loud and belligerent state with
23  his wife on the beach in front of several of our
24  producers.

```
 1            The incident was dramatic enough that
 2   it prompted the producers to call their Chubb
 3   executive representative upon return from the trip
 4   to express concern about the incident.  And that
 5   incident was passed on to me by my counterpart in
 6   Dallas.
 7            I confronted Doug on the issue
 8   immediately upon hearing about this and expressed
 9   my concerns about the perception.
10       Q.   Why did you confront Doug Baillie about
11   that?
12       A.   Because I was concerned about the
13   impression or impact it's created at a
14   Chubb-sponsored meeting by an executive creating
15   potentially that kind of impression.
16       Q.   And this was a performance-related
17   issue because of his position with Chubb?
18       A.   Sure.  Yes.
19       Q.   You wanted to talk to him and get his
20   side of the story, et cetera, right?
21       A.   Yes.
22       Q.   When was this alleged confrontation?
23       A.   By "the alleged confrontation," you
24   mean the incident in Jamaica?
```