# FREKING & BETZ
*Attorneys At Law*

RANDOLPH H. FREKING*
SHEILA M. SMITH
MARK W. NAPIER*
CAROL S. WOOD
MARSHA CALLOWAY-CAMPBELL
CARRIE ATKINS BARRON**
KELLY MULLOY MYERS*
MEGAN E. CLARK
GEORGE M. REUL, JR.

215 EAST NINTH STREET
FIFTH FLOOR
CINCINNATI, OHIO 45202

TELEPHONE: (513) 721-1975
FACSIMILE: (513) 651-2570

RFreking@frekingandbetz.com

50 EAST RIVERCENTER BOULEVARD
SUITE 400
COVINGTON, KENTUCKY 41011

TELEPHONE: (859) 292-2510
FACSIMILE: (859) 651-2570

*Also Admitted in Kentucky
**Also Admitted in Indiana and Illinois

## FACSIMILE COVER SHEET

TO: Suzanne Johnson          FAX #: 908-903-5787

FROM: Randolph H. Freking    TIME: 12:44 PM

DATE: October 9, 2001        NO. OF PAGES: 4
                             (including cover sheet)

RE: Douglas Baillie

**COMMENTS:**

IF YOU SHOULD HAVE ANY PROBLEMS WITH THIS TELECOPY OR
HAVE ANY QUESTIONS REGARDING ITS RECIPIENT
PLEASE CALL (513) 721-1975

## CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGE

The information contained in this facsimile is attorney-client privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any examination, distribution or copying of this communication is strictly prohibited.

EXHIBIT 40

Exhibit U

# FREKING & BETZ
### *Attorneys At Law*

RANDOLPH H. FREKING*
SHEILA M. SMITH
MARK W. NAPIER*
CAROL S. WOOD
MARSHA CALLOWAY-CAMPBELL
CARRIE ATKINS BARRON**
KELLY MULLOY MYERS*
MEGAN E. CLARK
GEORGE M. REUL, JR.

215 EAST NINTH STREET
FIFTH FLOOR
CINCINNATI, OHIO 45202

TELEPHONE: 513-721-1975
FACSIMILE: 513-651-2570

www.frekingandbetz.com

RFreking@frekingandbetz.com

50 EAST RIVERCENTER BOULEVARD
SUITE 400
COVINGTON, KENTUCKY 41011

TELEPHONE: 859-292-2510
FACSIMILE: 513-651-2570

*Also Admitted in Kentucky
**Also Admitted in Indiana and Illinois

October 8, 2001

**VIA FACSIMILE AND U.S. MAIL**
908-903-5787

Chubb & Son
Suzanne Johnson
Associate Counsel
General Counsel Department
15 Mountain View Road
P.O. Box 1615
Warren, NJ 07061

Re: Douglas Baillie

Dear Suzanne:

As we discussed Wednesday, this letter is in response to your September 27 fax to me of three documents that allegedly support the Company's decision to terminate Mr. Baillie. As you know, the documents are memos from Tim Szerlong to Doug Baillie in follow-up to Mr. Szerlong's visit of May 2, 2001. The memos set forth Mr. Szerlong's objectives and goals for Mr. Baillie for the subsequent months.

A comparison of the objectives and goals in the memos with Doug Baillie's actual performance confirms that he has met or exceeded the assigned objectives and goals in substantially all areas:

1.  Regarding the Scorecard memo and objectives, attached is a copy of Mr. Baillie's 2001 Scorecard and his August 22, 2001 communication to Mr. Szerlong detailing how Mr. Baillie had met or exceeded the 2001 Scorecard targets in virtually all areas.

2.  Regarding the Priorities memo and objectives, Mr. Baillie has again met or exceeded those objectives:

    a.  As to Cincinnati, Mr. Baillie achieved substantial turn around in profit results. The profit is the best in the entire Zone and without which the Zone would be losing monies. Please let me know if we are incorrect as to this issue.

**FREKING & BETZ**

October 8, 2001
Page 2

    b.    As to effective direction and engagement of regional resources, Mr. Baillie has met with the branch managers, conducted needs analysis, and set goals based on those needs. Quarterly follow-up is in place to insure the plan is on track. Now, the Region is the most profitable in its Zone with the highest growth. Again, please let me know if we are incorrect as to this issue.

    c.    As to effective management of the shift in the production offices, please note that both production branches are ahead of their new business goals. In comparison, the Zone is behind in its new business plans. Both of Mr. Baillie's production offices are very profitable due to his superb leadership and execution of non-renewing distressed business and driving rate.

    d.    As to effective internal management engagement, Mr. Baillie's direct reports receive constant feedback on performance. The branches' turnaround of profit, aggressive travel, and success in writing new business are examples of how Mr. Baillie's Branch is a performance leader in its Zone and when compared to other U.S. operations. Again, please let me know if we are incorrect as to this issue.

    e.    As to effective interface and communication at all levels within the organization, Mr. Baillie has excelled. The anonymous 360 feedback from the Cincinnati staff was a 8.5 in 1999 and a 8.4 in 2000, while Mr. Baillie achieved a total 360 feedback score of 8.4 for both years. Mr. Baillie has historically received high grades in leadership in Chubb administered 360 feedback scores when compared to peers.

The results achieved in Cincinnati of a remarkable turnaround in profit, service, and cash flow while driving new business and growth demonstrates Mr. Baillie's strong, effective leadership. As a further example of Mr. Baillie's outstanding leadership, with Ohio UM being a crisis in this state, Mr. Baillie led a meeting at the home office that included underwriting, claims, branch, management, and legal departments to formulate a strategic plan. Both Tim Szerlong and Paul Krump, head of Global Commercial Underwriting, gave Mr. Baillie excellent reviews on the meeting, the outcome, and his demonstrated leadership of the crisis situation. Again, please let me know if we are incorrect as to this issue.

    3.    Regarding the Regional Role in 2001 memo and objectives, Mr. Baillie's adaptation to his new role was excellent as detailed above, resulting in his Region being the most profitable in its Zone with the highest growth.

    4.    Regarding Mr. Szerlong's concerns on the topics of the Production Offices, Sales Focus, and Jeff Barton as stated in the May 7, 2001 Recap & Follow-up memo for his visit with Mr. Baillie on May 2, those concerns were seemingly overstated:

    a.    As to the Louisville production office, this branch was ahead of its new business goals, growing at 10%, aggressively traveling, and for the first time in years making a profit. All areas were in fact exceeding the Zone's results. Agency management plans was one of Andy Bryant's development areas. Mr. Baillie sent to Mr. Szerlong copies of each individual's written goals, which Mr. Szerlong approved.

FREKING & BETZ

October 8, 2001
Page 3

   b.   As to the Columbus production office, Mr. Szerlong expressed that Tom Motamed had concerns about sales efforts at this branch from Mr. Motamed's recent visit there. In fact, Jeff Bezold averages a very high 15 agency calls per month and, like Louisville, is <u>exceeding all targets</u>, including those of new business and profit.

   c.   As to Sales Focus, the sales efforts were in fact good in all three offices with agency calls up by 20%, (other branches may not even keep such records) and the Cincinnati branches are ahead of their new business goals in comparison to the Zone and other U.S. operations, who are behind.

   d.   As to Jeff Barton, he has clear goals and is carrying them out well. Jeff was rated by Mr. Szerlong's Marketing Zonal as the top performer of marketing in the Zone.

  As a result of the above analysis, we are concerned about the stated reasons for Mr. Baillie's termination. The termination will have a substantial impact on his life; we propose that the separation offer be improved as follows:

   1.   Mr. Baillie should be treated as if he worked another five years, for pension purposes;

   2.   Mr. Baillie should be covered under Chubb's health insurance until he is eligible for similar health insurance coverage; and,

   3.   Mr. Baillie should be vested in all restricted stock that would vest within five years.

  Please consider these facts and circumstances in your re-evaluation of Chubb's current proposal to Mr. Baillie. The compensation offered to him is inadequate and the further requested compensation is warranted.

  Please call Mark Napier of our office or me (I will be in an age discrimination trial Tuesday through Friday of next week) to discuss this matter further.

       Sincerely,

       Randolph H. Freking

RHF/mn

cc:   Mr. Doug Baillie