# FREKING & BETZ
*Attorneys At Law*

RANDOLPH H. FREKING*
SHEILA M. SMITH
MARK W. NAPIER*
CAROL S. WOOD
MARSHA CALLOWAY-CAMPBELL
CARRIE ATKINS BARRON**
KELLY MULLOY MYERS*
MEGAN E. CLARK
GEORGE M. REUL, JR.

215 EAST NINTH STREET
FIFTH FLOOR
CINCINNATI, OHIO 45202

TELEPHONE: (513) 721-1975
FACSIMILE: (513) 651-2570

RFreking@frekingandbetz.com

50 EAST RIVERCENTER BOULEVARD
SUITE 400
COVINGTON, KENTUCKY 41011

TELEPHONE: (859) 292-2510
FACSIMILE: (513) 651-2570

*Also Admitted in Kentucky
**Also Admitted in Indiana and Illinois

## FACSIMILE COVER SHEET

**TO:** Suzanne Johnson        **FAX #:** 908-903-5787

**FROM:** Randolph H. Freking  **TIME:** 4:48 PM

**DATE:** October 30, 2001     **NO. OF PAGES:** 11
                               (including cover sheet)

**RE:** Doug Baillie

**COMMENTS:**

IF YOU SHOULD HAVE ANY PROBLEMS WITH THIS TELECOPY OR
HAVE ANY QUESTIONS REGARDING ITS RECIPIENT
PLEASE CALL (513) 721-1975

### CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGE

The information contained in this facsimile is attorney-client privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any examination, distribution or copying of this communication is strictly prohibited.



EXHIBIT 42

Exhibit W

# FREKING & BETZ
*Attorneys At Law*

RANDOLPH H. FREKING*
SHEILA M. SMITH
MARK W. NAPIER*
CAROL S. WOOD
MARSHA CALLOWAY-CAMPBELL
CARRIE ATKINS BARRON**
KELLY MULLOY MYERS*
MEGAN E. CLARK
GEORGE M. REUL, JR.

215 EAST NINTH STREET
FIFTH FLOOR
CINCINNATI, OHIO 45202

TELEPHONE: 513-721-1975
FACSIMILE: 513-651-2570

www.frekingandbetz.com
RFreking@frekingandbetz.com

50 EAST RIVERCENTER BOULEVARD
SUITE 400
COVINGTON, KENTUCKY 41011

TELEPHONE: 859-292-2510
FACSIMILE: 513-651-2570

*Also Admitted in Kentucky
**Also Admitted in Indiana and Illinois

October 31, 2001

**VIA FACSIMILE AND U.S. MAIL**
908-903-5787

Chubb & Son
Suzanne Johnson
Associate Counsel
General Counsel Department
15 Mountain View Road
P.O. Box 1615
Warren, NJ 07061

Re: Douglas Baillie

Dear Suzanne:

This correspondence is intended to be a formal request for your client to reconsider its decision to terminate the employment of Doug Baillie after 26 years of successful performance for Chubb. Alternatively, this is a formal, pre-litigation request that the company engage in good faith efforts to resolve the matter, either by way of traditional negotiation, mediation, or mediation/arbitration.

Mr. Baillie acknowledges that the separation package that has been offered to him is consistent with company policy. If Mr. Baillie believed that the package offered was fair in light of the claims that he is required to release in order to receive the package, Mr. Baillie would sign the agreement and move on. However, a good faith assessment of Mr. Baillie's potential claims against the company results in a conclusion that the package is simply insufficient.

Mr. Baillie acknowledges that the liability of Chubb that is alleged in the enclosed draft Complaint will be subject to good faith dispute. We estimate that, depending upon the course of discovery, Mr. Baillie has between a 50% and 90% chance of successfully prosecuting claims against Chubb.

However, with respect to Mr. Baillie's potential damages that he could be awarded upon successful prosecution of one or more claims, the insufficiency of the company's offer becomes clear. Under Ohio law and federal law, Mr. Baillie could be awarded his net lost wages and benefits between October 1, 2001 and a projected date in the future at which those losses would disappear. We believe that, in light of Mr. Baillie's substantial pension losses that he simply cannot recoup due to the simple reality of vesting requirements, Mr. Baillie will continue to suffer net losses for his life. Under federal law, any net loss between October 1 and the date of a judgment would be doubled if Mr. Baillie successfully prosecuted a claim for

FREKING & BETZ

October 31, 2001
Page 2

age discrimination. This is true because most juries who find age discrimination under federal law also conclude that the age discrimination was willful, thus entitling the plaintiff to a liquidated damages award.

While Mr. Baillie cannot recover emotional distress or punitive damages for age discrimination under federal law, those remedies are available under Ohio law. In addition, there is no cap on those damages. Our experience with juries in Hamilton County and the Southern District of Ohio is that they are more than willing to recognize substantial emotional distress that is suffered by individuals of Mr. Baillie's age who are abruptly terminated and placed in a situation of substantial uncertainty. Likewise, most juries that conclude a violation was "willful" also conclude that the Plaintiff is entitled to an award of punitive damages. Punitive damages, by definition, are always substantial.

Under both federal and state law, Mr. Baillie could also be awarded reasonable attorneys' fees and expenses associated with the litigation. If pressed to trial, those attorneys' fees and expenses would easily be in six figures. One local federal judge recently awarded Plaintiff's counsel $445,000 in attorneys' fees and costs when a case alleging constructive discharge was settled during trial.

Mr. Baillie's potential damages are enormous. At the time of his termination, he was earning $148,000 per year in salary. He may not be able to replace that salary ever and it is likely that he will only land other employment after a substantial job search. We estimate that his net lost wages alone for the next five years will be in excess of $250,000, assuming he obtains some substantial employment.

In addition to bonuses because of his status and performance as a Senior Vice President, Mr. Baillie also received substantial benefits because of his outstanding performance. As you know, he was awarded restricted stock in 1998 in recognition of his outstanding performance. His termination will result in the loss of that stock, plus other stock that he could have reasonably anticipated to be awarded in the future.

Mr. Baillie has also lost substantial stock options as a result of the termination. In 1999, Mr. Baillie was awarded 3,343 options; in 2000, he was awarded 4,514 stock options. (In 2001, no stock options or bonus were paid because of the February 27, 2001 review, despite significant contributions.) Not only is he prohibited from exercising vested stock options by virtue of his termination, he will lose unvested stock options and stock options that he would have been granted in the future. Obviously, these losses can easily be projected at well over a million dollars during the next 10 to 15 years.

Most significantly, Mr. Baillie's pension loss is substantial. Mr. Baillie worked for Chubb for 26 years and dedicated his career to the company in anticipation of receiving retirement benefits that were projected for him each year. Based upon figures provided by the company, we have projected present value of those retirement losses (using a 6% discount factor) to be between $286,089 and $342,171, depending upon whether you assume Mr. Baillie would have retired at age 55 or 65.

FREKING & BETZ

October 31, 2001
Page 3

  Mr. Baillie has lost other substantial benefits as well. Among those losses are relocation mortgage assistance, which provided Mr. Baillie a benefit of approximately $500 per month, a company car (which the company values at $5,000 per year), a country club membership, and other normal employee benefits.

  At the time of his termination, Mr. Baillie was assured the package was open to negotiation and that the restricted stock probably would be granted to him on a pro-rata basis. However, when we attempted to negotiate, the only "extra" provided to Mr. Baillie in addition to normal company policy was the pro-rata grant of the restricted stock that he had already been assured he would receive. Mr. Baillie's original request was that the company simply increase its offer in such a way as to ameliorate the anticipated pension loss.

  Using even the most conservative settlement valuation tools which we are aware, we cannot in good faith value your requested release of claims at anywhere close to the proposed consideration.

  In order to ensure that the company realizes Mr. Baillie is serious, we again renew our request that the company reconsider its decision in this matter.

  Mr. Baillie has authorized us to allow the company to reconsider its decisions for a period of 10 days. If the company is not willing to reconsider its decisions, Mr. Baillie has authorized us to file a Complaint substantially similar to the draft that we enclose for you as courtesy.

  Mr. Baillie was a longstanding and dedicated employee of the company. He has successfully rebutted the allegations of unsatisfactory performance that have been leveled against him, most significantly by using objective rather than subjective data. He would like to focus the rest of his career on work rather than litigation, consistent with his views of fairness and a manner in which dedicated employees ought to be treated during and after employment.

  Although I did not detail any emotional distress suffered by Mr. Baillie as a result of the company's decision, I will note that it has taken a significant toll on Mr. Baillie's wife. If you would like more information in that regard, we will be glad to provide it to you.

  With respect to potential mediation or arbitration/mediation, we will agree to any professional mediator familiar with employment discrimination claims that you would suggest. Further, we would be willing to mediate at any time in whatever location is convenient for the company. Finally, Mr. Baillie is willing to participate to a reasonable degree in the costs associated with a mediation. Naturally, we can also negotiate in the traditional manner.

  Please call me if you have any questions.

    Sincerely,

    Randolph H. Freking

RHF/klp
Enclosure (Complaint)

DRAFT - OCTOBER 2001

Randolph H. Freking (0009158)<br>
Mark W. Napier (0019700)<br>
George M. Reul (0069992)<br>
Trial Attorney for Plaintiff

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | |
|---|---|
| DOUGLAS W. BAILLIE<br>7713 Pine Isle Court<br>Cincinnati, Ohio 45244<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHUBB & SON INSURANCE<br>15 Mountain View Road<br>P.O. Box 1615<br>Warren, NJ 07061.<br><br>　　　　Defendant. | Case No. _____<br>J. _____<br><br><br><br><br><br>**COMPLAINT WITH JURY<br>DEMAND ENDORSED HEREON** |

Plaintiff Douglas W. Baillie, complaining of Defendant Chubb & Son Insurance, alleges as follows:

### PARTIES

1. Plaintiff Douglas W. Baillie is a resident and citizen of the Hamilton County, Ohio. Mr. Baillie was employed by Defendant for approximately 26 years before his abrupt termination in September, 2001 for false performance related reasons.

2. Defendant Chubb & Son Insurance is a one of the largest insurance companies in the world. Defendant does business within Hamilton County, Ohio. Defendant is an employer within the meaning of federal and state law.

## FACTUAL ALLEGATIONS

3. This Court has jurisdiction over the allegations in the Complaint and venue is appropriate in this County.

4. Plaintiff intends to amend this Complaint at a later time after he fulfils certain jurisdictional pre-requites under the federal age discrimination and employment act.

## FACTUAL ALLEGATIONS

5. Plaintiff was born on June 18, 1950.

6. Plaintiff began his employment with Defendant on September 30, 1975.

7. Plaintiff held the position of Regional Branch Manager - Cincinnati for approximately three years.

8. Plaintiff was fully qualified for his position at all relevant times.

9. Plaintiff was a loyal and dedicated employee during his tenure with Defendant.

10. Prior to being notified of his abrupt termination on August 27, 2001, Plaintiff was performing well as the Regional Branch Manager - Cincinnati. As manager in the "Northern Zone", he was ahead of other managers within the zone in terms of profit, growth, and other goals.

11. The financial results of Plaintiff's group were superior and Defendant had previously stated on consistent basis that financial results of a branch should be a Manager's top priority. The financial results of a particular branch for Defendant normally constitute 75% of a person's overall performance evaluation. Plaintiff was meeting or exceeding all of his target goals in the remaining areas constituting 25%.

2

12. Beginning in February, 2001, Defendant began to create a paper trail to "justify" the unlawful treatment of Plaintiff on account of his age and in order to avoid the further vesting of valuable employee benefits. Prior to a review on March, 2001, Plaintiff's supervisor never communicated any problems with Plaintiff's performance.

13. The paper trail created by Defendant, through its agent, Tim Szerlong, was riddled with untrue allegations against Plaintiff, allegations Plaintiff demonstrated to Defendant were untrue. Szerlong intentionally presented an unbalanced view of Plaintiff's performance.

14. During the last several years of his employment, Plaintiff's performance was superior to that of younger employees who were similarly situated to Plaintiff.

15. By terminating Plaintiff for illegal reasons, Defendant was allowed to retain younger, less qualified employees. Mr. Szerlong admitted that the performance evaluation was "one sided..." Nonetheless, Plaintiff's profit, growth, and new business remained strong in the branch and his leadership remained strong, consistent with employee feedback that Plaintiff had received in 1999 and 2000 that had rated him highly in the area of leadership. Szerlong had accused Plaintiff of failing in the area of leadership. Plaintiff's leadership resulted in consistent grown and rapid turnaround of the Cincinnati branch book of business, resulting in millions of dollars of profit for Chubb in 2001 and beyond.

16. Plaintiff's job responsibilities have been assumed by a younger, lesser experienced individual.

17. At the time of his termination, Plaintiff was one of the oldest branch managers (perhaps the oldest) in the Zone. Plaintiff's performance at the time of his termination was superior to that of younger counterparts.

18. Defendant abruptly and wrongfully communicated the termination of Plaintiff's employment on or about August 27, 2001. This termination has caused Plaintiff to lose

3

substantial monetary benefits of his employment, in an amount exceeding one million dollars. In addition, Plaintiff has suffered substantial emotional distress damages. Plaintiff believes that such damages will continue in the foreseeable future.

19. After his termination, Plaintiff attempted to engage in settlement discussions with Defendant. Defendant negotiated with Plaintiff in bad faith and attempted to coerce Plaintiff into signing a severance agreement that would have required a general release of all claims against Defendant. Defendant knew at the time of its severance offer the consideration offered was substantially inadequate.

20. Defendant's conduct was willful and malicious, and intended to benefit Defendant at the expense of Plaintiff.

## COUNT I
### (Age Discrimination - O.R.C. §4112.14)

21. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

22. Defendant's conduct violated Chapter 4112 of the Ohio Revised Code and Ohio public policy of discrimination against Plaintiff on account of his age.

23. As a result of Defendant's unlawful conduct, Plaintiff is entitled to damages pursuant to Section 4112.99 of the Ohio Revised Code and Ohio common law.

24. Defendant's actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

25. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment in an amount to be proven at trial but in excess of One Million Dollars.

## COUNT II

### (Ohio Public Policy)

26. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

27. Defendant was motivated in its termination of Plaintiff by a desire to avoid the further accumulation and further vesting of valuable employee benefits by Plaintiff.

28. Ohio public policy prohibits the wrongful conduct of Defendant that was designed to avoid the further accumulation and vesting of valuable employee benefits.

29. Defendant's actions constitute a breach of public policy, and were willful, wanton, and malicious in nature.

30. As a result of Defendant's unlawful conduct in violation of Ohio public policy, Plaintiff is entitled to damages in an amount to be proven at trial but in excess of One Million Dollars.

## COUNT III

### (ERISA)

31. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

32. Defendant's conduct violated Section 510 of the Employment Retirement Income Security Act. As a result of Defendant's unlawful conduct in violation of ERISA, Plaintiff is entitled to damages in an amount to be proven at trial but in excess of One Million Dollars.

5

## COUNT IV

### (Bad Faith)

33. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

34. Defendant had an obligation under Ohio law to negotiate with Plaintiff in good faith.

35. Defendant breached its obligation under Ohio law to negotiate with Plaintiff in good faith.

36. As a result of Defendant wrongful conduct, Plaintiff is entitled to damages in an amount to be proven at trial but in excess of One Million Dollars.

## COUNT V

### (Defamation)

37. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

38. During the last year of Plaintiff's employment, Defendant's agent or agents published false statements about Plaintiff.

39. At the time of the publication of the statements, Defendant and/or its agent(s) knew that the statements were false and acted with a reckless disregard as to whether the statements were false.

40. Defendant's statements constitute defamation and Plaintiff is entitled to damages in an amount to be proven at trial but in excess of One Million Dollars..

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(a) That Defendant be enjoined from further unlawful conduct as described in the Complaint;

(b) That Plaintiff be reinstated to his employment;

(c) That Plaintiff be awarded all lost pay and benefits;

(d) That Plaintiff be awarded other compensatory damages;

(e) That Plaintiff be awarded punitive damages;

(f) That Plaintiff be awarded reasonable attorneys' fees; and

(g) That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

Respectfully submitted,

_____
Randolph H. Freking (0009158)
Mark W. Napier (0019700)
George M. Reul (0069992)
Trial Attorneys for Plaintiff
FREKING & BETZ
215 East Ninth Street, Fifth Floor
Cincinnati, OH 45202
(513) 721-1975

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

_____

7