UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS W. BAILLIE, | ) | Case No. 1:02cv00062-SAS |
| | ) | |
| Plaintiff, | ) | (Judge S. Arthur Spiegel) |
| | ) | |
| -v- | ) | |
| | ) | **REPLY IN SUPPORT OF** |
| CHUBB & SON INSURANCE, | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Defendant. | ) | |

## I.    Introduction

In his opposition, the plaintiff, Doug Baillie ("Baillie"), fails to even address, and therefore concedes, three of the issues raised in Defendant Chubb & Son Insurance's ("Chubb") motion for summary judgment--ERISA, punitive damages, and stock option. He also ignores necessary elements of his promissory estoppel, retaliation and defamation claims. Finally, Baillie's opposition to Chubb's motion for summary judgment on his age discrimination counts is based on a fundamental misunderstanding of the concept of pretext. Specifically, Baillie attempts to avoid summary judgment by arguing that the termination decision was incorrect. The Supreme Court and this Circuit consistently has rejected this approach. Chubb has established that the reasons for Baillie's termination are supported by a great deal of evidence including the testimony of many Chubb managers. Baillie has not disputed, and cannot dispute, this evidence and as a result summary judgment is appropriate.

## II.    Baillie Concedes That Chubb Is Entitled To Summary Judgment On His ERISA And Punitive Damages Claims And Any Claim For Lost Stock Options.

In its motion for summary judgment, Chubb established that it was entitled to summary judgment with respect to Baillie's sixth Count for violation of ERISA, his claim for punitive damages and any claim for damages resulting from his voluntary election not to exercise stock

options.  Defendant's Motion for Summary Judgment ("Def. Motion") at 26-27, 29-30.  In Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition"), Baillie expressly concedes that summary judgment is appropriate with respect to his ERISA count.  Opposition at 1, fn. 1.  He fails to even address Chubb's argument and evidence regarding punitive damages and unexercised stock options.  Baillie thus concedes that summary judgment is appropriate with respect to these issues as well.

In order to overcome Chubb's arguments Baillie must designate *specific* material facts genuinely in dispute.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (emphasis added); Street v. J.C. Bradford and Company, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Because Baillie failed to put forth any evidence in opposition to Chubb's properly supported arguments, Chubb is entitled to summary judgment on all three issues.

## III.     Chubb Is Entitled To Summary Judgment With Respect To Baillie's Promissory Estoppel Claim Because He Can Not Establish A Breach Of Any Clear And Unambiguous Promise.

In its motion, Chubb also established that it was entitled to summary judgment with respect to Baillie's promissory estoppel count because, among other things, the alleged promise of "the most aggressive [severance] package" is not sufficiently clear and unambiguous to support a claim under Ohio law.  Def. Motion at 23-24.  In his opposition, Baillie fails to even address this argument.  Moreover, in his effort to establish a "promise;" he completely mischaracterizes his own deposition testimony.  The undisputed facts confirmed that no clear and unambiguous promise was ever made.  In addition, Baillie cannot dispute that he was offered and rejected a severance package which far exceeded the maximum severance allowed under Chubb's policies.

**A.    Baillie's Alleged Promise is Based on a Mischaracterization of His Deposition Testimony.**

Baillie's promissory estoppel claim rests entirely on a statement that Baillie claims Tim Szerlong ("Szerlong") made regarding his severance package.  According to Baillie's deposition testimony:

> "He [Szerlong] said, I am **recommending** the most aggressive package for you because you deserve it, which he [Szerlong] said, I know that doesn't seem like a big thing right now in view of being terminated."

Deposition of Douglas Baillie Vol. I at 95 ("Baillie Depo. Vol. I"; copies of cited pages attached as Exh. A).

In his opposition, "recommendation" is mischaracterized as a "promise."  There simply is no admissible evidence in the record of any promise which would support a promissory estoppel claim and for that reason alone Chubb is entitled to summary judgment on Baillie's fifth count.

**B.    Even if Szerlong Promised "the Most Aggressive [Severance] Package" the "Promise" is Not Sufficiently Clear and Unambiguous.**

Even if Baillie was promised the "most aggressive [severance] package, such a promise is not sufficient as a matter of law to give rise to a promissory estoppel claim.  In his opposition, Baillie completely ignored Chubb's argument that Szerlong's reference to a "most aggressive package" was not sufficiently clear and unambiguous to support a claim under Ohio law.  Def. Motion at 23-24.  During his deposition Baillie conceded that Szerlong's reference had no definite meaning and that Baillie's interpretation of "most aggressive" was based entirely on "supposition."  Deposition of Douglas Baillie Vol. II at 12 ("Baillie Depo. Vol. II"; copies of cited pages attached as Exh. B).  Because Baillie has not established a clear and unambiguous promise his promissory estoppel count must be dismissed.

**C.**     **It is Undisputed that Baillie was Offered and Refused a Package Which Far Exceeded Chubb's Maximum Severance.**

Even if the term "aggressive [severance] package" could somehow be deemed clear and unambiguous, Baillie's promissory estoppel claim must fail because it is undisputed that Chubb offered Baillie significantly more than its separation policy provided. Chubb's separation plan provides that employees with fifteen or more years of service "may receive two weeks of separation pay for each year worked, not to exceed a **maximum** of 52 weeks." Baillie Depo. Vol. II Exhibit 35 (attached as Exh. C)(emphasis added). It is undisputed that Chubb ultimately offered Baillie a severance package which, in addition to the 52 weeks of pay, also included COBRA reimbursement, outplacement, and over $90,000 in restricted stock. Baillie Depo. Vol. II. Exhibit 39 (attached as Exh. D). Thus, the package which Baillie rejected substantially exceeded the "most aggressive" package allowed by Chubb policy. **Indeed, Baillie has not pointed to a single Chubb employee who ever was offered more.** As pointed out in Chubb's opening brief, Baillie's promissory estoppel claim is nothing more than a clever attempt to introduce unsuccessful settlement discussions into the trial. [1] The claim is not supported by the law or any admissible evidence and should be dismissed.

---

[1] In an attempt to circumvent the evidentiary rules barring the introduction into evidence of settlement offers and conduct or statements made in compromise negotiations, Baillie claims that the settlement discussions should be admitted into evidence to prove that Chubb "failed to negotiate with him in good faith." Opposition at 37. If the Court rules that the facts of this case give rise to a separate cause of action which enables Baillie to introduce statements made during settlement negotiations, every time an employee negotiates a settlement with an employer and is offered less than what the employee feels he or she deserves, the employee could introduce evidence of settlement negotiations, to prove liability, or the purported value of his claim, simply by asserting a groundless failure to negotiate in good faith claim. "There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations." Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 980 (6th Cir. 2003) (holding "**any** communications made in furtherance of settlement are privileged.") Id. at 983 (emphasis added).

Because the existence of an alleged oral contract is at the heart of Baillie's promissory estoppel and retaliation claims, Baillie's trial counsel would have to disqualify himself so he could testify about his November 2001 communications with Chubb's counsel. Baillie's counsel has repeatedly assured Chubb's counsel and this Court that he will not be testifying. Moreover, the Amended Complaint contains no breach of contract claim and the December 21 letter from Baillie's counsel to Chubb's counsel, in which Baillie "attempts" to accept the enhanced package, is inadmissible double-hearsay.

**IV.    Chubb Is Entitled To Summary Judgment With Respect To Baillie's Retaliation Claim Because It Is Undisputed That He Was Offered An Enhanced Package <u>After He Retained Counsel.</u>**

In its motion for summary judgment, Chubb established that Baillie could not establish any adverse action element of a retaliation claim because it is undisputed that Chubb significantly increased its severance package and repeatedly extended the deadline for accepting the proposal **after** he retained counsel. Baillie Depo. Vol. II at 25-26. Once again Baillie has completely ignored Chubb's argument and failed to introduce any admissible evidence of any retaliatory or adverse action. In effect, Baillie is arguing that he can bring a retaliation claim because Chubb did not offer him as much as he wanted or because Chubb opted not to further extend the previously extended deadline for accepting a very generous severance package. There simply is no authority or evidence supporting a retaliation claim under these circumstances. Baillie's effort to circumvent Federal Rule of Evidence 408 by couching unsuccessful settlement negotiations as "retaliation" must be rejected.

**V.    Chubb Is Entitled To Summary Judgment With Respect To Baillie's Defamation Claim.**

Baillie cannot prevail on his defamation action against Chubb. The claim is based on two statements made by Dory Baillie, Baillie's wife, to Human Resources Manager Diane Haggard ("Haggard"). Haggard relayed the statements to her supervisor, Northern Zone Practice Leader for Human Resources, Jim Ekdahl ("Ekdahl").[2] Haggard had a dual reporting relationship to Baillie and Ekdahl. Deposition of Diane Haggard at 17 ("Haggard Depo."; copies of cited pages attached as Exh. E). According to Haggard Mrs. Baillie told her: (1) that she had had an argument with her husband at a Chubb convention in Jamaica and; (2) that her husband lied to Szerlong when Szerlong asked him whether the argument occurred. Haggard Depo. at 91-96.

---

[2] It is worth noting that none of the allegations in the Opposition are included in the Amended Complaint.

Mrs. Baillie now claims that she never made these statements to Haggard. Affidavit of Dory Baillie attached as Exhibit A to Opposition.[3]

Chubb denies that Haggard falsified her conversation with Mrs. Baillie. Assuming she did, however, Chubb is not liable for her actions because she was acting outside the scope of her employment. Chubb maintains that the statements Haggard made to Ekdahl were in fact true and that the statements were covered by a qualified privilege.

### A.    Assuming Haggard Made Intentionally False Statements About Baillie, She Was Not Acting Within the Scope of Her Employment.

According to Baillie, Haggard "hated" him and harbored "severe animus" toward him and this animus is what led Haggard to lie about him to Ekdahl. Opposition at 43-44. If, as Baillie contends, Haggard knowingly and intentionally made false statements to Ekdahl out of personal animosity, Haggard was acting outside the scope of her employment and Chubb cannot be held liable for her actions. "An employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." Byrd v. Faber, 57 Ohio St.3d 56, 59 (1991). "An intentional and willful attack committed by an agent or employee, *to vent his own spleen or malevolence* against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor." Id. (emphasis added); Cooper v. Grace Baptist Church, 81 Ohio App.3d 728, 737 (1992) (for respondeat superior doctrine to apply "where alleged tort is intentional one, behavior of employee/agent giving rise to it must be calculated to facilitate or promote business for which employee/agent was employed or engaged.") Thus, if Haggard made intentionally false statements about Baillie to Ekdahl out of personal animosity, as alleged, Chubb is not responsible for any damages Baillie claims to have suffered.

---

[3] Mrs. Baillie's Affidavit is more significant for what it does not say than for what it does say. She denies making the statements to Haggard about the argument with her husband, but does not deny that the argument occurred.

**B.    Haggard's Communications with Ekdahl Were Privileged.**

In addition, Haggard had a qualified privilege to make the statements in question. A qualified privilege exists if the publication was made in good faith, to someone with a common interest, limited in its scope, made at a proper occasion, in a proper manner, and to proper parties. Shepard v. Griffin Services, Inc. et al., 2d Dist. No. 19032, 2002-Ohio-2283 citing A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council, 73 Ohio St.3d 1, 8 (1995). The qualified privilege even extends to statements that would otherwise qualify as defamation *per se*. Shepard, supra citing Stokes v. Meimaris, 111 Ohio App.3d 176, 189 (1996).

Baillie does not claim that Haggard told anyone other than Ekdahl, her direct supervisor, about the statements that Mrs. Baillie made to her. Opposition at 44. Haggard relayed her conversation with Mrs. Baillie to Ekdahl because Haggard felt that Baillie's behavior was inappropriate and unprofessional since it occurred at a company event in the presence of senior Chubb personnel and top tier agents. Haggard Depo. at 9l-93. During her conversation with Mrs. Baillie, Haggard also learned that Baillie denied that the incident occurred when Szerlong questioned him about it.[4] Haggard Depo. at 95-96. The statements Haggard made to Ekdahl were privileged in that they were made in good faith to someone with a common interest in ensuring employees act professionally at company-sponsored events. Shepard, supra. (citing Hanly v. Riverside Methodist Hosp. 78 Ohio App.3d 73, 81 (1991) (communications between employer and employees that are made in good faith and with a common interest are protected by the qualified privilege)).

Baillie cannot avoid summary judgment by claiming that Haggard's actions were malicious because there is no evidence of malice in the record. Baillie claims that Haggard

---

[4] Szerlong became aware of the incident when some of the agents from Dallas, who witnessed the Baillies' argument, expressed their concern to their executive representative upon returning from Jamaica. Deposition of Tim Szerlong at 90-91 ("Szerlong Depo."; copies of cited pages attached as Exh. F).

"attempted to sabotage his career." Opposition at 43. In support, Baillie claims Haggard reported various complaints she received from other employees about Baillie to her supervisor, Ekdahl. Haggard Depo. at 20-21, 41-43, 45-47, 50-51, 61-62, 69, 78-79, 86-87, 91-95, 97-100, 127-129. However, as the Human Resources Manager, it was part of Haggard's responsibilities to report employee complaints up the chain of command. Id. at 46. There is no evidence that she did so maliciously. [5]

## VI.    Chubb Is Entitled To Summary Judgment On Baillie's Age Discrimination Claim Because He Has Not Established Pretext.

Because Baillie has not satisfied his burden of establishing that the reason proferred for his termination was pretextual, summary judgment should be entered in Chubb's favor on his age discrimination claim. The only evidence that Baillie offers to establish pretext is the mischaracterized testimony of a few of the managers who reported to him. The testimony is offered to show that Szerlong's decision was incorrect. However, in the pretext analysis, the proper question is whether Szerlong honestly believed in the nondiscriminatory reason for the termination. There is no evidence that he did not.

Baillie also attempts to rely on a comment allegedly made by Szerlong to another branch manager as evidence of discrimination. The "stray remark" did not concern Baillie and is insufficient to establish pretext. Finally, he argues that two younger managers with "leadership deficiencies" were not terminated by Szerlong. The record shows, however, that these two managers were not similarly-situated to Baillie and their leadership skills were not deficient.

---

[5] Baillie cites two incidents that allegedly spurred Haggard's hatred. The first involved Baillie's refusal to reimburse her for her cell phone calls. Opposition at 43. Haggard admitted that she was disappointed that Baillie did not reimburse her for the calls. Haggard Depo. at 123. The second involved Haggard's request for a reduced work schedule. Opposition at 43. Citing to her deposition testimony, Baillie claims that Haggard "became incensed" because of the way her request was handled. Opposition at 44. This is a complete mischaracterization of Haggard's testimony. Haggard Depo. at 104-110. In any event, neither of the incidents described by Baillie is sufficient to show malice.

A.       **Law Governing Pretext.**

The United States Supreme Court addressed pretext in  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).  In  Reeves, the Supreme Court made clear that even if the trier of fact disbelieves the nondiscriminatory explanation given by the employer, the trier is not compelled to find that the real reason was discrimination.  Id. at 147.  That is because the ultimate question is not whether the explanation was false, but whether discrimination was the cause of the termination.  Id. at 143 ("[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").  As the Supreme Court said in  Reeves:

> [A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Id. at 148.  Several Circuits, including the Sixth, have held that summary judgment is appropriate based upon the above language.  See Norbuta v. Loctite Corp., 2001 U.S. App. LEXIS 459 (6th Cir. 2001) (attached as Exh. G) (holding summary judgment appropriate where plaintiff made no plausible showing of national origin or age discrimination); Zapata-Matos v. Reckitt & Coleman, Inc., 277 F.3d 40 (1st Cir. 2002); Raggs v. Mississippi Power & Light Co., 278 F.3d 463 (5th Cir. 2002).

In addition, the Sixth Circuit has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee.  Smith v. Chrysler Corp., 155 F.3d 799, 806-07 (6th Cir. 1998).  Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. Id. at 806.

An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." Id. at 807. The Sixth Circuit explained the reasonable reliance standard as follows:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

Id.; see also, Stonum v. U.S. Airways, Inc. 83 F. Supp. 2d 894, 901 (S.D. Ohio 1999); Bowie v. Advanced Ceramics Corp. 2003 WL 21580406 (6th Cir.) (attached as Exh. H) (discharged employee unable to establish pretext where a company's good faith belief formulated through reasonable reliance on particularized facts led to its employment decision).

### B. Chubb is Entitled to Summary Judgment Because Szerlong Reasonably Relied Upon the Facts Before Him in Terminating Baillie's Employment.

As long as Szerlong honestly believed that Baillie's leadership skills were deficient and that belief led to his decision to terminate Baillie, Baillie cannot establish pretext even if it is ultimately determined that Szerlong was mistaken or incorrect in his assessment of Baillie. See Smith, 155 F.3d at 806 (the "honest belief" rule "provides that so long as the employer honestly believed in the proffered reason given for its employment action, the employee *cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial or baseless*") (emphasis added). An employer has an honest belief in its reason for discharging an employee when the employer "reasonably relied on the particularized facts that were before it at the time the decision was made." Id. at 807. "In deciding whether an employer reasonably relied on the particularized facts then before it, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Stonum, 83 F. Supp. 2d at 901.

The record establishes that Szerlong formed his assessment of Baillie's leadership skills based on his observations of Baillie's communications with his staff, the manner in which Baillie handled his managerial responsibilities, Szerlong's discussions with the managers who reported to Baillie regarding his lack of leadership, Szerlong's discussions with individuals in senior roles at Chubb's home office who did not support Baillie because of his leadership and management deficiencies, and the manner in which Baillie failed to address the performance issues of several of his staff members.  Szerlong Depo. at 45-48, 64-65, 96-98, 165.  Baillie has produced no evidence that Szerlong did not honestly believe in his assessment of Baillie's leadership or that he failed to reasonably rely on the facts before him.  By contrast, eight of the managers who reported to Baillie support Szerlong's assessment of Baillie's leadership ability.

### C.  The Evidence of Pretext Presented by Baillie is Based Largely on Mischaracterizations of the Record and is Insufficient to Establish Pretext.

#### 1.  Baillie cannot establish pretext by arguing that Szerlong's decision to terminate him was incorrect.

Baillie's arguments of pretext amount to nothing but a painstaking dissertation that Szerlong's decision to terminate him was a bad decision.  This line of argument misapprehends well-settled Sixth Circuit law regarding pretext.  The issue is not whether Szerlong's nondiscriminatory reason for terminating Baillie was a *good* reason, but whether it was the *real* reason.  See supra.

"The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with."  Norris v. Principi, 254 F. Supp.2d 883, 896 (S.D. Ohio 2003).  Rather, employers may not discharge an employee for a discriminatory reason.  See id.  To avoid summary judgment Baillie must establish that the reason Szerlong proffered for his termination was pretextual.  Thus, the only inquiry for the Court is whether the reason proffered was the real reason for Baillie's termination.  "The heart of the pretext inquiry

is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons." Standard, Jr. v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1333 (11th Cir. 1998). "A business decision need not be good or even wise. It simply has to be nondiscriminatory, for the only kind of business decision that the ADEA prohibits is a business decision that discriminates against the aged." Ortega v. Cosmair Inc., 1993 WL 185183 (6th Cir. 1993) (attached as Exh. I). "It is axiomatic that a court resolving a discrimination lawsuit does not sit as a super personnel board of review, to second guess an employer's business decisions." Norris, 254 F. Supp.2d at 896; see also, Smith v. Leggett Wire Co., 220 F.3d 752, 763 (6th Cir. 2000) (citing Krenik v. County of Le Sueur, 47 F.3d 953, 960 (8th Cir. 1995) (holding that court cannot sit as a "super-personnel department"); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (same); Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1085 (6th Cir. 1994) (holding that "*just-cause* arguments must not be allowed to creep into an employment discrimination lawsuit")).

Placed in their proper context, Baillie's arguments are nothing more than "just cause" arguments. For example, Baillie claims, "Defendant's assertion that it terminated [him] for leadership deficiencies is insufficient to justify his discharge" because he achieved financial results. Opposition at 30. In essence, Baillie argues that Chubb should have placed financial success over the leadership concerns that governed Szerlong's decision-making. Such an argument fails to establish pretext and improperly asks the Court to second-guess Chubb's business decisions.

Moreover, this argument ignores the record evidence. During his deposition, Baillie admitted that his area of responsibility was far from profitable during his tenure. He describes the region's financial performance during 1999, his first full year in Cincinnati, as "horrible."

Baillie Depo. Vol. I at 48.  In 2000 his region lost approximately $40 million dollars and he characterizes its financial performance as "just awful."  Baillie Depo. Vol. I at 156-157, 57-59, 54.  In short, he conceded that the branches he managed lost money four out of his last five full years at Chubb.

Baillie also presents 30 anonymous "360 degree feedback" evaluations from 2000 and 2001 as proof that some subordinates believed that he was an effective leader.  Pl. Exhibit A. to Opposition.  Baillie, however, managed over 150 people.  Considering the size of his staff, 30 somewhat favorable reviews over a two year period is hardly sufficient to establish pretext.  See Warfield v. Lebanon Correctional Institution, 181 F.3d 723 (6th Cir. 1999) (finding insufficient proof of pretext to prevent summary judgment for employer in Title VII case where plaintiff's rebuttal evidence consisted of testimony of co-workers who thought that she was doing a good job).

Similarly, Baillie relies on the testimony of some of his former managers regarding his leadership.  As noted, this sort of evidence fails to establish pretext; Baillie has succeeded only in establishing that some of his managers believed that he had some good qualities.  While some employees may have disagreed with Szerlong to some degree, Baillie's evidence falls far short of establishing that Szerlong failed to reasonably rely upon the facts before him at the time he made the decision to terminate Baillie's employment.

       **2.**      **The deposition testimony offered by Baillie in support of pretext has been mischaracterized:**

Baillie offered deposition testimony of seven of the managers who previously reported to him as proof that at least some of his managers "did not confirm Szerlong's perceptions about his leadership deficiencies."  Opposition at 22.  Much of Baillie's "proof," however, has been mischaracterized:

**Dieter Korte:**  Baillie states, "When Korte and Mr. Baillie discussed the financial turnaround at the Cincinnati branch, Mr. Baillie commented that he had laid the groundwork for the turnaround.  *Korte swears this comment is accurate.*"  Opposition at 23. (emphasis added).  Korte did not state definitively, let alone "swear," that Baillie's comment was accurate.  See Deposition of Dieter Korte at 109-110 (copy of cited pages attached as Exh. J).  Similarly, Baillie states, "Korte praised Mr. Baillie for clearly addressing goals in performance reviews."  Opposition at 23.  This statement cannot be inferred from the deposition page cited or any of Korte's testimony.

**Greg Tazic:**  Baillie states, "Tazic never reported his concerns about Baillie to Szerlong, and has no recollection of complaining about Mr. Baillie to Human Resources Managers Diane Haggard or James Ekdahl."  Opposition at 24.  Tazic actually testified that he did not *recall* complaining to Szerlong but that he *had* complained to Diane Haggard about Baillie on more than one occasion.  Deposition of Greg Tazic at 84, 42 (copy of cited pages attached as Exh. K).

**Michael Whitman:**  Baillie states, "Whitman found Mr. Baillie to be a balanced manager . . ."  Opposition at 25.  Whitman, actually testified that "Doug *did well in certain things and maybe not quite as well in others.  It would perhaps be a balance*."  Deposition of Michael Whitman at 12 (copy of cited page attached as Exh. L)(emphasis added).

**Jeff Barton:**  Baillie states, "Ultimately, Barton was surprised by Mr. Baillie's termination *because he could not have imagined* that there were issues that could have led to Mr. Baillie's termination."  Opposition at 26-27.  Not only did Barton not state that *he could not have imagined* that there were issues that could have led to Baillie's

termination, he specifically stated that *he knew there were some issues* regarding Baillie's performance.  Deposition of Jeff Barton at 32-33 (copies of cited pages attached as Exh. M).

**Andrew Bryant**:  Baillie states, **"**While the turn around [of the Kentucky territory] was attributable to many people, Bryant *accords ultimate credit* for the dramatic improvement in 2001 to Mr. Baillie."  Opposition at 27.  In reality, Bryant gave himself, not Baillie, primary credit for the improvement in the financial results in the Kentucky territory.  Deposition of Andrew Bryant at 44-45 (copies of cited pages attached as Exh. N).

### D.    Baillie has No Evidence of Age Discrimination.

In <u>Reeves</u>, 530 U.S. at 133, the Supreme Court noted that evidence of pretext alone may, but not always, sustain a fact-finder's determination of unlawful discrimination.  <u>Id</u>. at 148 (holding that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").  In particular, evidence of pretext is not enough where the plaintiff has created only a weak issue of fact as to whether the employer's reason is untrue, and there is "abundant and uncontroverted independent evidence that no discrimination occurred." Although the evidentiary burdens shift between the parties in this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  <u>Id</u>. at 143 (quoting <u>Texas Dep't. of Cmty. Affairs v. Burdine</u>, 450 U.S. at 248, 353 (1981)).  It is not enough "to disbelieve the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."  <u>Id</u>. at 147 (emphasis in original); <u>Norbuta</u>, supra (holding summary judgment appropriate where plaintiff made no plausible showing of national origin or age discrimination); <u>Curry v. Mazzio's Corp.</u>, 2003 WL 21690535 (10th Cir. 2003) (attached as Exh. O) (holding when there is no evidence of

discrimination in the record plaintiff's mere conjecture that her employer's explanation for its decision is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment).

Baillie has presented no evidence of age discrimination. He admits that he never heard Szerlong say anything negative about his age. Baillie Depo. Vol. I at 106. Nor did he see any documents that suggested age bias. Id. at 106-107. In short, Baillie has made no plausible showing of age discrimination and Chubb is entitled to summary judgment even if the Court concludes that a weak issue of fact exists as to the reason for his termination.

Due to the complete lack of evidence of age discrimination in Baillie's case, Baillie attempts to rely on allegations of discrimination by another manager who previously reported to Szerlong, Tom Breiner ("Breiner"). Breiner is the former Branch Manager for Chubb's Indianapolis branch. Breiner testified that during a meeting with Szerlong, "My age was brought up in that it could be a factor in terms of how I related to younger managers and developed younger managers and understood younger managers in my branch." Deposition of Tom Breiner at 47 (copy of cited page attached as Exh. P).

Initially, such evidence would be insufficient to establish discrimination with respect to Briener and certainly falls far short with respect to Baillie. See Phelps v. Yale Sec., Inc., 986 F2d 1020, 1026 (6th Cir. 1993) (a single, isolated age-related comment made one year prior to plaintiff's layoff was too long before the layoff to influence the challenged decision and support a finding of age discrimination); Kahl v. The Mueller Co. 1999 WL 196556 (6th Cir.) (attached as Exh. Q) ("stray remarks" temporally and topically distant from plaintiff's termination are insufficient to give rise to an inference of discrimination). Moreover, Breiner's deposition

testimony is irrelevant to Baillie's case because Baillie and Breiner were not similarly-situated. Boyle v. Mannesmann Demag Corp., 991 F.2d 794 (6th Cir. 1993).

In determining whether two individuals are similarly situated, Courts consider: (1) whether they reported to the same supervisor; (2) challenged the same adverse employment action; (3) were adversely treated at points close in time; and (4) alleged the same causes of action. See Shrand v. Federal Pacific Electric Co., 851 F.2d 152, 156 (6th Cir. 1998); Boyle, 991 F.2d at 794. Baillie and Breiner both reported to Szerlong, however, that is where the similarities end. Baillie is challenging his termination whereas, Breiner voluntarily resigned his position. There was no adverse action taken against Breiner for Breiner to challenge; he has not alleged a cause of action against Chubb.

Moreover, Baillie's and Breiner's departures from Chubb were remote in both time and circumstance. Baillie was terminated on August 27, 2001. Breiner resigned on July 31, 2003, two years after Baillie's termination. Because Baillie and Breiner were not similarly-situated, Breiner's testimony is not relevant to Baillie's claim and should be disregarded by the Court. Boyle, 991 F.2d at 794 (testimony from former employees whose terminations were remote in time and circumstance from plaintiff's termination cannot be probative of whether age was a determinative factor in plaintiff's termination).

Baillie's comparison of Szerlong's criticism of the leadership skills of two of Szerlong's other managers, Gary DeLong ("DeLong") and Richard Mauk ("Mauk") is also insufficient to support his claim of age discrimination. Opposition at 32. To prove discrimination by alleging that a non-protected person was treated more favorably, the "comparables" must be similarly-situated in all respects. Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992). To be considered "similarly-situated" the employees must have engaged in the same conduct "without

such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id.; Pierce v. Commonwealth Life Insurance Co. 40 F.3d 796 (6th Cir. 1994) (plaintiff must prove that all relevant aspects of his employment situation are nearly identical to those of the employees he alleges were treated more favorably).

The record establishes that neither DeLong or Mauk was similarly-situated to Baillie. For example, Baillie was placed on a performance improvement plan in 2001. DeLong and Mauk were never placed on performance improvement plans. Szerlong Depo. at 144-145. In fact, Baillie's assertion that DeLong and Mauk were deficient in their leadership skills is not supported by the record. Baillie has extracted a few isolated comments from DeLong's and Mauk's performance reviews in an attempt to show that their leadership skills were lacking. The record shows otherwise.

DeLong's 2001 performance scorecard indicates, "Gary is very effective in providing a clear sense of direction for his team and actively engaging in the tactics necessary to gain results." (attached as Exh. R). In the three categories that constitute the "people management" score DeLong received two "clearly exceeds" and an "exceeds." (attached as Exh. S). In 2003, Szerlong indicated Delong was "very effective in leading his team," and "very direct, and effective in communications." (attached as Exh. T). Szerlong also indicated that DeLong "has some very good success stories in bringing people along" indicating three of DeLong's subordinates. Id.

In 2000, Mauk was rated "clearly exceeds" in all five areas of the "people management/leadership" category. (attached as Exh. U). In 2001 in the areas of "communication" and "coaching/development" he was rated a 4 out of 5. (attached as Exh. V).

In 2002, Mauk received a "meets all" and a "clearly exceeds" in the "people management" category. (attached as Exh. W).

By contrast, Baillie's 2001 performance review indicated low numerical ratings of 2.5 out of 5 in the areas of leadership, communication and coaching/development. (attached as Exh. X). In the area of leadership Szerlong indicated a "critical area for growth; there are issues here." Id. In the area of "communication" Szerlong noted that he was "looking for more nuance" from Baillie and Baillie needed to be aware of his audience when communicating. Id. Finally, in the area of coaching/development, Szerlong indicated that Baillie's "HR results [are] not there yet" and that there was a need for more consistency from Baillie's top performers. Id.

## VII.    CONCLUSION

Based on all of the foregoing, Chubb is entitled to summary judgment on all of Baillie's claims.

Respectfully submitted,

s/ David K. Montgomery
David K. Montgomery (0040276)
Mark J. Chumley (0067321)
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 579-6475
Fax: (513) 579-6457
dmontgomery@kmklaw.com
mchumley@kmklaw.com
Attorneys for Defendant,
Chubb & Son Insurance

OF COUNSEL:
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
(513) 579-6400

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Reply in Support of Defendant's Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to Randolph H. Freking and Mark W. Napier, attorneys for Plaintiff, this 10th day of November, 2003.


s/ David K. Montgomery
_____
David K. Montgomery