996 F.2d 1216 (Table) Page 1
**Unpublished Disposition**

(Cite as: 996 F.2d 1216, 1993 WL 185183 (6th Cir.(Ohio)))

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Ninfa A. ORTEGA, Plaintiff-Appellant,
v.
COSMAIR, INC., Defendant-Appellee.

No. 92-3655.

May 28, 1993.

On Appeal From the United States District Court for the Northern District of Ohio; No. 91-00112, Krenzler, J.

N.D.Ohio

AFFIRMED.

Before MILBURN, RYAN and NORRIS, Circuit Judges.

PER CURIAM.

**1 Plaintiff Ninfa Ann Ortega appeals the district court's grant of summary judgment for defendant Cosmair, Inc. ("Cosmair") on her claims of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, as well as the dismissal of her pendent state law claims. On appeal, the sole issue is whether the district court erred in granting summary judgment for Cosmair. For the reasons that follow, we affirm.

I.
A.

Cosmair manufactures and sells hair coloring products, cosmetics, and fragrances such as L'Oreal Preference hair color, Lancome and Plenitude cosmetics, and Cacharel, Giorgio Armani and Ralph Lauren fragrances in its role as the exclusive American licensee of L'Oreal of Paris. Cosmair is divided into six operating divisions, one of which is the L'Oreal Hair Care Division. Each division has a corporate head and Human Resources representative who carry out personnel functions, including the replacement of employees who are ill.

Plaintiff Ortega was born on March 14, 1936. She was hired by Cosmair on August 20, 1973. Her employment with Cosmair was terminated on March 9, 1990, when she was 53 years of age.

The Hair Care Division is divided into geographical regions, each of which is supervised by a regional sales manager. Each region is divided into districts, which are supervised by district sales managers. The districts are divided into sales territories, which are serviced by full-time territory representatives.

Plaintiff was employed as a territory representative. During 1989 and until her last day of work on December 1, 1989, plaintiff's sales territory was located in north central Ohio. Her duties included making sales calls on retail outlets, such as K Mart and Hills Department Stores, securing orders for Cosmair products, insuring that Cosmair products were properly stocked and displayed, and completing various administrative duties.

Patrick Allsteadt has been a district sales manager in Cosmair's Hair Care Division since 1985. Allsteadt was Ortega's immediate supervisor from April 1989 until the termination of her employment. As district sales manager, Allsteadt oversaw the work of the territory representatives in each sales territory within the district to assure that they were properly servicing accounts as well as arranging for a satisfactory supply and display of Cosmair's products.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Westlaw  Westlaw  Exhibit I

996 F.2d 1216 (Table) Page 2
(Cite as: 996 F.2d 1216, 1993 WL 185183, **1 (6th Cir.(Ohio)))

When Allsteadt became plaintiff's supervisor, he redivided the assignments of all the territory representatives who reported to him. Plaintiff was unhappy with the way that Allsteadt changed her territory because she believed that there was no way to effectively route herself within her new territory in order to call on all her customers. According to plaintiff, when she pointed out to Allsteadt that his changes were not efficient for her or the company, he replied that he wanted it that way. Plaintiff also stated that at the conclusion of this meeting, Allsteadt looked at her and told her that there was one more thing she needed to know--that when he reviewed people, he never dropped them drastically; he dropped them a little at a time.

**2 During 1989 and 1990 Allsteadt reported to Allen Phillips, the regional sales manager. During that same period, Phillips reported to George Cornell, the Hair Care Division's National Field Sales Manager. Beginning in June 1988, Shelly Sawyer was employed as the Director of Human Resources for the Hair Care Division. Her duties included employee relations, administering Cosmair's short term disability benefits program, administering Cosmair's equal employment policies, and overseeing the application of corporate and divisional employment policies and practices. In fulfilling these duties, Sawyer worked closely with Christopher Corbett, Cosmair's Associate Corporate Counsel.

After becoming Ortega's supervisor, Allsteadt began observing deficiencies in the manner she serviced her accounts and carried out her administrative responsibilities. Specifically, Allsteadt spent two days working with Ortega on June 13 and 14, 1989. On June 16, he generated a memorandum critical of her work. He noted that plaintiff worked 17 days in April out of a possible 20 and 9 days in May out of a possible 21. Allsteadt accused plaintiff of planning her vacation but not her work. Plaintiff responded to Allsteadt in writing stating that he had implemented major changes in her sales territory and that her vacation, which had already been planned, coincided with the major territory changes.

She also stated that she offered to change the times of her vacation when she learned about the territory changes and that Allsteadt refused. Moreover, although Allsteadt gave Ortega written assessments of her performance deficiencies, he also attempted to encourage her by notifying her in writing of areas of her performance which had improved. Ortega considered this as "nit-picking" and harassment. Allsteadt also contacted Phillips and Sawyer about plaintiff's job performance. In November 1989, Allsteadt completed a regular performance evaluation of Ortega's work. On November 29, 1989, he discussed this evaluation with her. Taking into account all factors, Allsteadt graded Ortega's performance as 88 out of a possible 155 points, which was on the low side of a "good" rating, the median rating. Allsteadt also wrote on the performance appraisal that "Ann's [plaintiff's] accounts are in good condition." J.A. p. 135.

Plaintiff's last day of work was December 1, 1989. On December 2, she was admitted to a hospital with a heart condition, paroxysmal atrial tachycardia. Four days later, plaintiff was discharged from the hospital and her family physician, Dr. Kilonsky, told her she could return to work in 12 to 14 days. Plaintiff does not recall if she ever notified Cosmair of Dr. Kilonsky's instruction that she could return to work.

Plaintiff was also under the care of Dr. William E. Braun, a staff physician at the Cleveland Clinic. Dr. Braun diagnosed paroxysmal atrial tachycardia, a heart condition, which he determined was precipitated by factors including several serious stress situations and depression. Dr. Braun recommended that plaintiff follow a specific medication schedule and maintain a relatively firm activity schedule. In a letter dated January 10, 1990, and addressed "to whom it may concern," Dr. Braun stated that plaintiff was totally disabled and estimated that she could return to work full-time on April 1, 1990.

**3 In mid-December 1989, Allsteadt tried to learn when Ortega would return to work. She

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




996 F.2d 1216 (Table) Page 3
(Cite as: 996 F.2d 1216, 1993 WL 185183, **3 (6th Cir.(Ohio)))

told him she did not know. Sawyer also unsuccessfully tried to learn details about Ortega's condition from her. Plaintiff testified that she considered Cosmair's attempts to learn when she would return to work as "harassment."

In plaintiff's absence, Allsteadt called in other territory representatives to assist in servicing her sales territory. Nonetheless, Allsteadt also admitted during a deposition that at no time during plaintiff's absence did he or any of the other territory representatives who serviced plaintiff's stores ever inform the store managers that she was away from work due to illness. Moreover, Allsteadt and Phillips believed that using other territory representatives to service plaintiff's stores was not adequate to maintain the desired full range of regular services for customers in Ortega's territory and in the territories of those trying to cover for her. They determined that the customers in Ortega's territory required the full-time attention of a territory representative as quickly as possible, and they discussed the necessity of filling Ortega's position.

Also during plaintiff's absence, additional information came to Allsteadt's and Phillips' attention concerning her job performance. In December, Allsteadt visited some of plaintiff's accounts and found a number of out-of-stock items. In mid-December, Allsteadt received a complaint from K Mart stating that Ortega had not visited one of its stores since October. Phillips also received a complaint about Ortega from a K Mart representative. Subsequently, Phillips and Allsteadt reduced their concerns to writing in a memorandum which stated that Ortega would be put on probation when she returned to work. Thereafter, Allsteadt and Phillips conferred with Sawyer, who met with Corbett. They decided that because the written criticism of Ortega was couched in strong terms and because Cosmair was unaware of the severity of her condition, the memorandum would be sent at a time according to Sawyer's discretion.

Sawyer also informed Corbett that other territory representatives of the Hair Care Division were servicing Ortega's accounts and that her supervisors wanted guidance about the procedure for replacing her. Corbett replied that the Hair Care Division should use the same criteria for Ortega as it would for any other employee.

During Sawyer's employment as Human Resources Representative, the Hair Care Division followed a practice of holding a job open for three months in the event of an absence for medical reasons, even where there was a business necessity to fill the position more quickly. From June 1988 to March 1990, 21 Hair Care Division employees were absent for a period of more than thirty days. Sixteen of these employees returned within three months or less. Two others did not return. Two other employees were given an additional week beyond the three-month period because they gave a definite return date which was no more than one week beyond the three-month period. However, Ortega failed to return to work within the three-month period, which expired on March 2, 1990. Moreover, Ortega also failed to give a definite return date, and, in fact, the record shows that she was not medically cleared to return to work until April 1991.

**4 However, the record also shows that Dermot Flynn, Senior Vice President of Human Resources at Cosmair, testified in his deposition that there was no written corporate policy dictating how long an employee could be out sick before the employee was replaced. Flynn went on to explain stating that this is because the division general manager of each of Cosmair's six divisions, along with the Human Resources personnel for each division, decide how long a sick employee can be out before being replaced based upon business necessity. Furthermore, Cosmair's extensive policy manual contains a short term disability policy which provides employees with 26 weeks of coverage, but contains no mention of a three-month sick leave policy.

In February, Sawyer advised Corbett that because of problems in servicing Ortega's territory, it was necessary that she return to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




work within the three- month period or that a replacement be hired. Cosmair's usual practice, when the end of the three-month period neared, was to warn an employee by letter that unless she returned to work by the expiration of the period she would be replaced. The letter was usually sent either one or two weeks before the expiration of the period. Since the three-month period expired on March 2, 1990, Sawyer sent a letter to Ortega on February 20, 1990, informing her that if she did not return to work by Monday, March 5, 1990, she would be replaced. In the letter, she was also informed of the criticisms of her job performance and advised that if she did return by March 5, the job performance issues would have to be addressed and that she would be on probationary status. Sawyer also informed Ortega that if she were unable to return to work by March 5, she would be considered for other positions with Cosmair when she was able to return to work.

Sawyer and Ortega discussed the letter on February 21. Ortega stated that she told Sawyer she would return to work "on or about April 1," but Ortega also admits in her deposition that she did not tell Sawyer that she would "definitely" return on that date. Ortega also stated that she suggested that perhaps she could return by March 5 on a part-time basis and build up to full time. Sawyer responded that the position of territory representative was a full-time position and could not be worked part time.

Shortly thereafter, Sawyer was contacted by Ortega's lawyer. Sawyer referred the matter to Corbett. On March 1, Ortega's lawyer telephoned Corbett and informed him that it was possible that Ortega could return to work within a relatively short period of time and that she wished to contact her doctor in that regard. Corbett offered to hold the position open for an additional week, until March 12, provided that Cosmair received confirmation that Ortega would return to work by that date. On March 9, another of Ortega's attorneys notified Corbett by letter that Ortega's date of return could not be determined. The letter also expressed the opinion that Cosmair had discriminated against Ortega because of age.

**5 Cosmair terminated Ortega's employment on March 9. On March 12, 1990, Cosmair hired Robyn Tickner, age 26, as the territory representative for the north central Ohio area previously serviced by Ortega.

On June 27, 1990, Ortega filed a charge of age and handicap discrimination with the Ohio Commission of Civil Rights. The Commission found, on March 14, 1991, no probable cause that Cosmair had discriminated against Ortega on the basis of age or handicap.

B.

Plaintiff filed her action against Cosmair on January 22, 1991, alleging three causes of action. The first cause of action alleged that Cosmair violated the ADEA when it discharged plaintiff from her position as a territory representative on March 9, 1990. The second cause of action alleged that Cosmair failed to reasonably accommodate plaintiff's handicap in violation of the Ohio Civil Rights Act, Ohio Rev.Code § 4112.02(a), when it discharged her. The third cause of action alleged intentional and negligent infliction of emotional distress. On March 22, 1991, plaintiff filed an amended complaint realleging the three previous causes of action and adding a fourth cause of action for breach of contract.

Cosmair filed a motion for summary judgment on all four causes of action on January 10, 1992. Plaintiff responded to Cosmair's motion. On June 4, 1992, the district court issued an opinion and order and a judgment entry granting summary judgment in favor of Cosmair on plaintiff's claims under the ADEA. The district court also dismissed plaintiff's pendent state law claims, the second, third, and fourth causes of action, pursuant to *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966). Subsequently, on June 15, 1992, the district court issued an amended judgment entry dismissing the case in its entirety. This timely appeal followed.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




## II.

Plaintiff argues that the district court erred in granting summary judgment for Cosmair on her claims under the ADEA. Specifically, she asserts that the district court disregarded critical evidence which she had submitted when it granted summary judgment.

This court reviews a district court's grant of summary judgment de novo. *See Faughender v. City of North Olmstead, Ohio,* 927 F.2d 909, 911 (6th Cir.1991). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). Since both parties in this case presented evidence pertinent to the motion for summary judgment, summary judgment is proper "where the evidence is such that it 'would require a directed verdict for the moving party.'" *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986) (quoting *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 644 (1944)).

Accordingly, after viewing the evidence in the light most favorable to the nonmoving party, this court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 255. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**\*6** A plaintiff who brings an ADEA claim must prove that age was a determining factor in the adverse action that the employer took against him or her. *See Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229-30 (6th Cir.1990). The plaintiff bears the burden of proving a prima facie case of discrimination by a preponderance of the evidence. *Id.* at 229; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

In order to establish a prima facie case of age discrimination, a plaintiff must prove that: (1) the plaintiff was a member of a protected class; (2) the plaintiff was subjected to an adverse employment action; (3) the plaintiff was qualified for the job previously performed; and (4) the plaintiff was replaced by a person who is not a member of a protected class. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1983).

If the plaintiff is able to prove a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Kraus,* 915 F.2d at 230 (citing *Wilkins v. Eaton Corp.,* 790 F.2d 515, 521 (6th Cir.1986)). In order to prevail, the plaintiff must then demonstrate that the reasons proffered by the employer were not the true reasons for the adverse employment action either by showing directly that a discriminatory reason more likely motivated the employer or by showing indirectly that the employer's proffered explanation is a mere pretext, unworthy of credence. *Burdine,* 450 U.S. at 256. To meet the burden of persuasion of establishing that the reason proffered by the employer for the adverse employment action was pretextual, a plaintiff in an ADEA case must produce direct, indirect or circumstantial evidence that age was a factor in the employment decision and that "but for" this factor she would not have been terminated. *See Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989).

The district court found that plaintiff Ortega had established a prima facie case of age discrimination. In its brief on appeal, Cosmair states that it does not challenge this finding by the district court. Further, the district court found that Cosmair had met its burden of articulating a legitimate, nondiscriminatory reason for plaintiff's termination, namely,

a full-time employee was needed to service the plaintiff's territory; the plaintiff was unable to work on a full-time basis during the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




period December through March; the defendant held the plaintiff's position open for at least three months; and when it was learned that the plaintiff could not be able to return to full-time work by March 12, 1990, a new full-time employee was hired, trained, and began working the plaintiff's former territory.

J.A. pp. 52-53. The district court then gave plaintiff an opportunity to demonstrate, by competent evidence, that the reason articulated by Cosmair for her termination was a pretext for a discriminatory decision. After reviewing the evidence, the district court concluded that the evidence did not support the assertion that Cosmair's articulated business reason was pretextual, nor did it support a general inference of age discrimination. Accordingly, the district court granted summary judgment in favor of Cosmair.

**\*7** Plaintiff Ortega challenges the district court's finding that she had not shown that Cosmair's articulated reason for her termination was pretextual. Specifically, plaintiff asserts that in reaching its decision the district court ignored a substantial amount of critical facts, did not view the evidence and the inferences to be drawn from it in the light most favorable to her, and failed to closely scrutinize Cosmair's evidence.

Plaintiff first argues that defendant's actions in replacing her with a new employee who spent her first two weeks in training, worked one week, and then attended a national sales meeting in California was unreasonable after plaintiff offered to work part time during the month of March and then return to full-time employment on April 1, 1990. Specifically, plaintiff asserts that

> a trier of fact could easily conclude that it makes more business sense to allow an experienced, seasoned employee to work part-time for three weeks, and resume full-time work thereafter, than to hire an entirely new, inexperienced employee, who needs to be trained, and is therefore available to work less hours during March than Ortega would have been available part-time.

Appellant's brief, p. 22. However, "[t]he ADEA was not intended to be a vehicle for judicial second-guessing of business decisions, nor was it intended to transform the courts into personnel managers." *Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1216 (3rd Cir.1988), *cert. denied,* 490 U.S. 1098 (1989) (quoting *Thornbrough v. Columbus and Greenville R.R. Co.,* 760 F.2d 633, 647 (5th Cir.1985)). "A business decision need not be good or even wise. It simply has to be nondiscriminatory, for the only kind of business decision that the ADEA prohibits is a business decision that discriminates against the aged." *Fite v. First Tennessee Production Credit Ass'n,* 861 F.2d 884, 891 (6th Cir.1988) (quoting *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 20 (7th Cir.1987).

In this case, Cosmair submitted evidence to the effect that the position of territory representative in the Hair Care Division had always been a full-time position, not a part-time position. Thus, when Cosmair rejected plaintiff's offer to work part time during the month of March 1990, it treated her no differently than other territory representatives in the Hair Care Division. The ADEA does not require an employer to accord special treatment to employees over forty years of age; rather, it requires that an employee's age be treated in a neutral manner, neither facilitating nor hindering advancement, demotion, or discharge. *Parcinski v. Outlet Co.,* 673 F.2d 34, 37 (2d Cir.1982), *cert. denied,* 459 U.S. 1103 (1983).

Plaintiff next argues, based upon the deposition testimony of Dermot Flynn, that Cosmair had no policy relating to the replacement of employees after three months and that Cosmair only made up the policy after learning that plaintiff would be absent from work for four months. However, although Flynn testified that Cosmair had no written policy relating to the length of sick leave before an employee would be replaced, Flynn also testified that this was because each of the six divisions of Cosmair had its own policy based upon business necessity.

**\*8** Shelly Sawyer testified in her deposition that the Hair Care Division followed a policy of keeping the position of an ill employee open

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




for three months even if business necessity dictated filling the position sooner. Moreover, Cosmair also submitted evidence showing that the Hair Care Division had consistently followed such a policy since 1988. Thus, contrary to plaintiff's assertion, there is no evidence of record that Cosmair simply made up a three-month policy after it learned that plaintiff would be away from work due to her illness for at least four months. Further, even though Cosmair failed to hold plaintiff's position open for an additional month, the evidence of record shows that doing so would have resulted in according treatment to plaintiff beyond that accorded to other employees of the Hair Care Division since 1988. As stated above, the ADEA does not require that individuals over the age of forty be accorded preferential treatment. *Parcinski,* 673 F.2d at 37.

Plaintiff also argues that a material factual issue exists in this case as to whether Cosmair has a written policy against age discrimination. In support of her contention that Cosmair has no written policy against age discrimination, plaintiff submitted deposition testimony from individual Cosmair employees stating that Cosmair had no policy on age discrimination. In response, Shelly Saywer testified in a deposition that Cosmair has a separate written policy prohibiting age discrimination which is part of its manual for employees. Thus, it appears that some of Cosmair's employees may have been unaware that the company had a written policy prohibiting age discrimination. However, even though there may be a factual dispute in the record as to whether all of Cosmair's employees were aware that it had a written policy against age discrimination, such evidence is so abstract that even when viewed in the light most favorable to plaintiff, it fails to raise an inference that defendant discriminated against plaintiff on the basis of age. Moreover, such evidence does not provide a basis to disbelieve defendant's articulated nondiscriminatory reason for terminating plaintiff.

Plaintiff also asserts that the district court erred in ignoring evidence which she presented that she should not have been placed on probationary status if she returned to work. However, plaintiff did not return to work by March 12, 1990, at which time Cosmair, due to business necessity, terminated her employment and filled her position. Since plaintiff never returned to work because she had not been medically cleared to return to work, and in fact was not medically cleared to return to work until April 1991, whether or not plaintiff's work performance prior to her illness warranted her being placed on probationary status is irrelevant. Plaintiff was not terminated based upon her work performance; indeed, the evidence shows that if plaintiff had been able to return to work by March 12, 1990, Cosmair would have permitted her to do so. Thus, this evidence also provides no reason to disbelieve defendant's articulated nondiscriminatory reason for terminating plaintiff.

**9 Finally, plaintiff asserts that if a need to replace her existed, it was created by her supervisor, Allsteadt. She asserts that Allsteadt created such a need by failing to inform the managers of the stores which she serviced that she was off from work due to illness. However, Allsteadt testified that he did not tell the store managers that she was off sick because he was unaware of the nature of plaintiff's illness or the length of time she would be away from work. Plaintiff admits that she never communicated with Allsteadt about the possible date of her return to work. Further, Allsteadt could not have created the need for a full-time territory representative to fill plaintiff's position because her position was one that historically required a full-time territory representative. Rather, when the attempt to service plaintiff's territory with territory representatives from other territories who were required as well to service their own territories proved unworkable, Cosmair did what it had always done; namely, it filled plaintiff's position with a full-time territory representative.

Accordingly, we hold that the district court properly concluded that plaintiff failed to establish that the nondiscriminatory reason articulated by Cosmair for plaintiff's

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




996 F.2d 1216 (Table)  
(Cite as: **996 F.2d 1216**, 1993 WL 185183, \*\*9 (6th Cir.(Ohio)))

Page 8

termination was not pretextual. Thus, the district court properly granted summary judgment for defendant on plaintiff's claims under the ADEA. Moreover, because the district court properly granted summary judgment on plaintiff's claims under the ADEA, it also properly dismissed plaintiff's pendent state law claims without prejudice. *See United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

### III.

For the reasons stated, the district court's grant of summary judgment is AFFIRMED.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works


