UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHERYL A. SOUTHERLAND,            :          NO. C-1-02-162

         Plaintiff,               :
                                  :
    v.                            :           ORDER
                                  :
                                  :
SYCAMORE COMMUNITY SCHOOL         :
DISTRICT BOARD OF EDUCATION       :
                                  :
         Defendant.               :

This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 10), Plaintiff's Memorandum in Opposition
(doc. 15), and Defendant's Reply (doc. 17).

**BACKGROUND**

The following facts have been derived from the various
pleadings, motions, and responses in this matter.  This is a case
in which Plaintiff alleges statutory sexual harassment and
discrimination claims based on federal and state law under Title
VII and O.R.C. § 4112.02 (doc. 1).  Plaintiff was hired as a bus
driver by Defendant in September 1997.  Plaintiff alleges that
beginning on or about April 19, 1999, during the course of her
employment, she was subjected to unwelcome and offensive sexual
comments and conduct by a co-worker, Ralph Smith, that created an
intimidating, hostile, and offensive work environment (Id.).
Plaintiff alleges that Mr. Smith asked her how sex was on a
waterbed, asked her to lunch despite that she was married, stared
at her in an intimidating manner after she had rejected his

advances and complained about his conduct, and repeatedly disobeyed direct orders not to have any contact with her (Id.). Plaintiff alleges that the comments interfered in her ability to perform her job, that she complained to Defendant, and that Defendant neither exercised reasonable care to either prevent the comments and conduct of Ralph Smith before it occurred nor exercised reasonable care to prevent or eliminate such conduct after she had complained (Id.). Plaintiff's Complaint included eight claims: (1) for sexual harassment under 42 U.S.C. § 2000e, (2) for sexual discrimination under 42 U.S.C. § 2000e, (3) for sexual harassment under Ohio Rev. Code § 4112, (4) for sexual discrimination under Ohio Rev. Code § 4112, (5) for violation of Ohio public policy, (6) for the tort of sexual harassment, (7) for the tort of negligent retention, and (8) for negligent infliction of emotional distress (Id.). On May 1, 2003, Plaintiff indicated that she was abandoning her claims of sex discrimination under federal and state law, as well as her claim for negligent infliction of emotional distress (doc. 15). As such, the allegations now in issue are those pertaining to state and federal sexual harassment, violation of Ohio public policy, and the torts of sexual harassment and negligent retention.

Defendant filed its Motion for Summary Judgment on March 31, 2003, arguing that there are no genuine issues of material fact as to Plaintiff's claims and Defendant is entitled to judgment as a matter of law (doc. 10). Defendant argues under case law in other courts that the conduct in this case is insufficient to

sustain a sexual hostile environment claim (Id.). Defendant argues specifically under Sixth Circuit law that staring at someone, without more, is generally not sufficient to create a hostile work environment (Id.). For the same reasons, Defendant argues that Plaintiff's claims for sexual harassment under Ohio Revised Code § 4112 and under Ohio public policy should fail (Id.)'. Defendant next argues that there is no cause of action for common law sexual harassment as distinct from statutory sexual harassment under the Ohio Revised Code (Id.). Finally, Defendant argues that Plaintiff's claim for negligent retention fails because the evidence shows its agents responded to Plaintiff's complaints, and that such response resulted in the resignation of Ralph Smith (Id.).

**ANALYSIS**

**I.   Summary Judgment Standard**

        The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.  Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" Guarino, 980 F.2d at 405 (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990).  Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the

moving party or the court to demonstrate that summary judgment is appropriate. Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**II. Discussion**

As an initial matter, because Plaintiff indicated in her Memorandum in Opposition that she is abandoning her state and federal law claims for sexual discrimination[1] and for negligent infliction of emotional distress (doc. 15), the Court grants summary judgment on those claims. As such, the Court will devote its analysis to the remaining claims of federal and state sexual harassment, claims pursuant to Ohio public policy, and tort claims for sexual harassment and negligent retention.

**A. Title VII Claim for Sexual Harassment**

In Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986), the Supreme Court held that, "for sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the condition of [the victim's] employment and create an abusive working environment.'" Id. at 67, (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). To establish a Title VII offensive work environment sexual harassment claim, a plaintiff must establish that the harassment was because of plaintiff's

_____

[1] A sex discrimination claim differs from a hostile environment claim in that its prima facie case includes the requirement that plaintiff demonstrate disparate treatment of a comparable employee in an unprotected class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Ohio state law claims for sex discrimination are subject to the same requirement. See Plumber & Steamfitters Commt. v. Ohio Civil Rights Comm., 66 Ohio St. 2d 192, 196 (1981).

gender and that it created a hostile work environment.  Mast v. Imco Recycling of Ohio, Inc., No. 01-3657, 2003 U.S. App. LEXIS 1940, *1, *4-5 (6th Cir. February 3, 2003).  To establish a hostile work environment, plaintiff must demonstrate that "the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff." Rabidue v. Osceola Refining Co., 805 F.2d 611, 619 (6th Cir. 1986), cert. denied, 481 U.S. 1041 (1987), see also Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993).  In determining whether a plaintiff has met this burden, this Court is directed to adopt the perspective of a reasonable person's reaction to a similar environment under like circumstances. Rabidue, 805 F.2d at 620.  The Court should examine all the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).

Once a plaintiff has established that the harassment was because of sex and that it was sufficiently severe or pervasive, plaintiff must show that her employer bears responsibility for the harassment. Mast, 2003 U.S. App. LEXIS 1940, *7.  If the harasser was a co-worker, the employer will be liable only where the plaintiff can demonstrate that the employer knew or should have known of the harassment and failed to take appropriate remedial

action.  Id. at *8, citing EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 518 (6th Cir. 2001), Courtney v. Landair Transp., Inc., 227 F.3d 559, 564-65 (6th Cir. 2000).

### I.  Defendant's View: No Sexual Harassment Occurred

Defendant states that all the circumstances in this case taken together do not indicate Ralph Smith's conduct was severe or pervasive enough to unreasonably interfere with Plaintiff's work performance (doc. 10).  Defendant provides a laundry list of its version of all the circumstances: one mildly sexual comment regarding a water bed, one note asking Plaintiff to lunch, one note asking for directions, a signature on a get-well card, staring from across the room of the bus lounge, catching a ride on her bus with two other drivers but not speaking to her while on the bus, parking his bus next to hers in the bus lot, sending her and other drivers Christmas cards, waving at Plaintiff at one occasion when their buses passed, and  arriving at the lounge ten minutes earlier than he should have (Id.).  The Court notes that according to Defendant, Plaintiff responded to the query about sex in a water bed that "it was good," that Plaintiff had volunteered information to Mr. Smith about the size of her breasts, and that Plaintiff had told crass jokes at lunches in the presence of Mr. Smith (Id.).

Defendant argues that in the light of the precedent of other courts the conduct of the offending employee in this case was insufficient to sustain a sexual hostile environment claim (doc. 10).  Defendant argues that in Mast, the Plaintiff's supervisor had attempted to pat her buttocks, told her she was too pretty to be

7

working where she was, and in one instance grabbed and shoved her (Id.)(citing Mast, 2003 U.S. App. LEXIS 1940). Defendant states that the Sixth Circuit ruled that these incidents were not sufficiently severe or pervasive to warrant liability (Id.). Defendant states that unlike in Mast, Ralph Smith was not Plaintiff's supervisor, and Smith never touched her (Id.). As such, Defendant argues, the case for sexual harassment in this case is weaker than Mast, a case in which the Sixth Circuit affirmed the grant of summary judgment against the plaintiff (Id.).

Defendant further argues that under Sixth Circuit law, "staring at someone, without more, is not generally sufficient to create a hostile work environment" (Id.)(citing Mast, 2003 U.S. App. LEXIS 1940 at *20). Finally, Defendant argues that persuasive authority in Shepherd v. Comptroller, 168 F.3d 871 (5th Cir. 1999) and Baskerville v. Culligan, 50 F.3d 428 (7th Cir. 1995) provides examples of boorish and offensive conduct more severe than the alleged conduct of Ralph Smith (Id.). In Shepherd, Defendant argues that over a period of two years, the offending employee engaged in unwanted touching, attempted to look down plaintiff's clothing, commented that her "elbows are the same color as her nipples," simulated looking under her dress, and invited her to sit on his lap (Id.). In Baskerville, Defendant states that the offending employee made comments or gestures referring to naked women and masturbation, and grunted when plaintiff wore a leather skirt (Id.). Defendant argues that the courts did not find that the conduct in Shepherd or Baskerville rose to the level of an

8

objectively hostile environment (Id.). Therefore, argues Defendant, the Court should find similarly in its review of the alleged conduct of Ralph Smith, which is less offensive in nature (Id.).

Finally, Defendant's Reply argues that Ralph Smith did not sexually harass Plaintiff because there was no conversation between them after April 21, 1999 (doc. 17). Defendant argues that Plaintiff has not provided legal authority that parking a bus next to a co-worker's bus or arriving early to work can constitute sexual harassment (Id.). Defendant further argues it is disingenuous for Plaintiff to argue that no disciplinary action was taken by Defendant when Plaintiff did not make a sexual harassment complaint until September of 1999 (Id.).

### II.   Plaintiff's View: There Was a Sexually Hostile Environment

Plaintiff responds that Mr. Smith's behavior was sufficiently severe or pervasive and the totality of the circumstances did indeed create a hostile work environment (doc. 15). In a conflicting version of the facts, Plaintiff states that in response to Ralph Smith's April 19, 1999 query about sex in a water bed, she "ignored him and acted like he didn't even ask the question and continued eating" (Id.). Plaintiff states that she reported the incident and a subsequent note from Mr. Smith inviting her to lunch to her supervisor, Janet Schultz, who took no disciplinary action (Id.). After a second unwanted note, Plaintiff states that she gave Mr. Smith a note indicating that "It's time to

9

stop the notes. It's not funny. I'm happily married. Please stop or I'll have to take further actions" (Id.). Plaintiff states that for the remainder of the school year, she was subjected to staring by Mr. Smith, an event common enough that it was observed by co-workers (Id.). Finally, Plaintiff states she learned that Smith had asked another employee for directions to her house (Id.).

When the school year commenced again in September of 1999, Plaintiff states Mr. Smith's unwelcome behavior continued and that she immediately complained to Ms. Shultz (Id.). According to Plaintiff she learned that Mr. Smith was spreading rumors about her (Id.). Additionally, Mr. Smith allegedly continued his staring (Id.). Ms. Shultz, according to Plaintiff, felt uncomfortable pursuing a sexual harassment investigation against Mr. Smith because of her own difficulties with him (Id.). According to Defendant, Ms. Shultz asked Plaintiff if Plaintiff would like to speak to the sexual harassment directors for the district, Jack Bucholz and Peggy Phillips (doc. 10). After hearing another rumor about her and Mr. Smith, Plaintiff took Ms. Shultz up on her offer and met with Bucholz and Phillips on September 27, 1999 (Id.).

As a result of the September 27, 1999 meeting, Bucholz allegedly told Plaintiff Mr. Smith was "a sick person," that she should not let her guard down, and that she should obtain a whistle (doc. 15). Bucholz and Phillips also verbally instructed Mr. Smith to stay away from Plaintiff at all times (doc. 10).

According to both sides, Mr. Smith did not conform strictly to the instructions. Mr. Smith parked his bus near

10

Plaintiff's and arrived to the lounge earlier than he should have.
Mr. Smith caught a ride on Plaintiff's bus during a field trip and
stared at her in the mirror (doc. 15).

On October 18, 1999, Plaintiff called Bucholz who asked
her if she wanted to make a formal complaint (doc. 10). Plaintiff
agreed to do so (Id.). Bucholz and Phillips met with Mr. Smith and
again gave him express directives regarding any contact with
Plaintiff (Id.). Mr. Smith was told to park in a separate parking
lot and to arrive and depart from work at specific times in order
to avoid Plaintiff (Id.).

According to Plaintiff, Mr. Smith violated the directives
by parking in the same lot as she, by arriving early and loitering
at the bus compound when not on the clock (Id.). When Plaintiff
reported these violations to Bucholz, she states she was told that
everything was being documented, not to take her guard down, and
that Mr. Smith was a sick person (Id.). Mr. Smith allegedly
continued to disregard the directives (Id.). Plaintiff states that
as a result she suffered from insomnia, headaches, and depression,
necessitating that she take a two-week leave in late November 1999
(Id.).

On November 30, 1999, Ms. Phillips issued a letter to Mr.
Smith and to Plaintiff with findings and conclusions of the
investigation following the October 18 complaint (Id.). Those
conclusions included directives that Smith not arrive prior to 6:40
a.m., that he not return before 2:25 p.m. after which time he
should leave immediately; that he stop any discussion about his

relationship with Plaintiff; and that he attend sexual harassment in-service training to be provided at a subsequent date (Id.). Plaintiff alleges that despite this directive, Mr. Smith continued with his incessant stare (Id.).

On December 7, 1999, Mr. Bucholz drafted a letter that was orally conveyed to Mr. Smith, stating that Smith had already violated the restrictions by arriving early at the bus compound and by sending a Christmas card to Plaintiff (Id.).  On December 16, 1999 Mr. Smith violated the restrictions yet again by attending a Christmas breakfast outside the hours that he was permitted to be on the premises (Id.).  In response to Plaintiff's report of this to Mr. Bucholz, she was told that everything was being documented.

When the drivers returned from Christmas break, Plaintiff claims that Mr. Smith resumed his conduct by showing up early for work (Id.).  Additionally, Plaintiff alleges that Mr. Smith laughed and joked about the in-service sexual harassment seminar and boasted that he was responsible for the session (Id.).  Finally, Plaintiff claims that on January 30, 2000, Mr. Smith passed Plaintiff while on their bus routes and made an exaggerated wave and smile to her that upset her to the point of tears and physical pain (Id.).  Ms. Schultz took Plaintiff to the school nurse who treated her for high blood pressure (Id.).  After this incident, Plaintiff went on medical leave and did not return until the following school year (Id.).  Defendant suspended Mr. Smith on February 16, 2000, and then gave Smith the option to resign or be fired (doc. 10).

### III. Plaintiff has Raised Genuine Issues of Material Fact as to Whether a Sexually Hostile Environment Existed

The Court finds an obvious dispute as to the material fact of whether Ralph Smith's water bed statement was an unexpected come-on. The Court will not make a credibility determination at the summary judgment stage. It will be for a jury to decide whether Plaintiff's version of events is true, or whether Defendant, though lacking in decorum, reasonably acted within a context where Plaintiff allegedly told crude jokes, and had allegedly referred to her breast size.

Having reviewed Defendant's citation to Mast, Shepherd, and Baskerville, the Court finds such cases distinguishable. In Mast, there was no incessant behavior on the part of the alleged harasser, and the physical contact between harasser and victim was found to be devoid of sexual implication. Plaintiff in this case alleges that Mr. Smith was a constant foreboding presence. His behavior merited the workplace version of a restraining order, verbal and written warnings to stay away from Plaintiff, which Smith ultimately and consistently ignored. Smith's alleged cavalier attitude toward Plaintiff's allegations and the restrictions placed upon him shows that this case is not one of isolated, boorish remarks like the Shepherd and Baskerville cases, but is rather a case of disturbing, consistent recalcitrance. See Faragher, 524 U.S. 775, 787-88. A jury could find that Defendant's approach to dealing with Smith was soft to the detriment of Plaintiff, who was told on a number of occasions to not let her

13

guard down and that Smith was a "sick person." A jury could even find that Defendant's remarks, including that Plaintiff should resort to self-help by obtaining a whistle, may have exacerbated Plaintiff's fear and stress rather than redressing the hostile environment.

Defendant argues that staring is generally not enough, without more, to create a hostile work environment. Yet in this case, there was more. Plaintiff made it clear to Mr. Smith that she was uncomfortable with his notes and invitation to lunch and that she was happy in her marriage. Mr. Smith's staring, therefore, came after his attempts to gain time with Plaintiff were rebuffed, and could be viewed as retribution for Plaintiff's rejection. Furthermore, the staring persisted despite warnings to stay away from Plaintiff, was of such an intensity that others noticed it, and was accompanied by rumors that Smith allegedly propagated. The Court finds that staring within the context of these facts could be found to contribute to the creation of a hostile work environment. Smith's alleged pattern of non-verbal communicative behavior is such that it is of little relevance that there was no verbal conversation between him and Plaintiff after April 21, 1999.

Defendant places too high a burden on Plaintiff, purporting to require her to provide narrow legal authority that parking a bus next to a co-worker's bus or arriving early to work can constitute sexual harassment. Defendant's argument is not well-taken, as the totality of circumstances indicates that these

14

two behaviors were in direct violation of workplace directives. A reasonable person who had complained that a co-employee was acting inappropriately, whose employer in response asked such co-employee to refrain from particular behaviors, could very well feel threatened when the co-employee refused to comply. Rabidue, 805 F.2d at 620.

Finally, the Court rejects Defendant's argument that Plaintiff's position is disingenuous that no disciplinary action was taken when she did not make a complaint until September of 1999. A reasonable jury could find that when Defendant was on notice, Defendant's action lacked teeth until the harassment reached a breaking point for Plaintiff. For all of these reasons, the Court finds that Defendant's attack on Plaintiff's claim for sexual harassment fails. Plaintiff has raised a genuine issue of material fact as to whether Mr. Smith's behavior was because of her gender and whether it was sufficiently severe or pervasive to create an abusive working environment. Meritor, 477 U.S. 57. Plaintiff has further demonstrated that Defendant knew that a hostile environment existed, and raises a genuine issue of material fact as to whether Defendant failed to take appropriate remedial action. Mast, 2003 U.S. App. LEXIS 1940, *8, citing EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 518 (6th Cir. 2001), Courtney v. Landair Transp., Inc., 227 F.3d 559, 564-65 (6th Cir. 2000).

**B.  Defendant's Critique of Plaintiff's Response**

Before addressing the balance of the claims at issue, the Court finds it appropriate to address two arguments raised by Defendant in its Reply Memorandum that are left unaddressed above. In its Reply, Defendant first argues that testimony included in the affidavit of Janet Potter, attached to the Plaintiff's Memorandum in Opposition to Summary Judgment is improper and should be disregarded by the Court (doc. 17). Defendant secondly argues that Plaintiff introduces hearsay and double hearsay testimony in her Memorandum in Opposition that is inadmissible and should be disregarded by the Court.

The Court has reviewed the affidavit of Janet Potter, and finds it unnecessary to rely on the suspect portions of such affidavit in order to arrive at any of the conclusions set forth in this Order. As for the alleged hearsay in Plaintiff's memorandum, Defendant refers to the content of the alleged rumors circulating about Plaintiff and Mr. Smith that Mr. Smith allegedly propagated.

The Federal Rules of Civil Procedure require statements considered in disposing of a motion for summary judgment to be "admissible in evidence" and "made on personal knowledge." Fed. R. Civ. P. 56(e). Therefore, evidence considered at the summary judgment stage is subject to the Federal Rules of Evidence. Ellis v. Jamerson, 174 F.Supp.2d 747 (E.D. Tenn. 2001). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay is not admissible

16

except as provided by [the Federal Rules of Civil Procedure]." Id. 802.

The matter asserted in the statements apparently in question is that Plaintiff and Mr. Smith were having an affair. The truth of that matter is not at issue in this case. Neither Plaintiff nor Defendant are trying to prove that it was true or false that Mr. Smith and Plaintiff were having an affair. However, Plaintiff raises an issue that there were rumors circulating about her that started with Mr. Smith. Plaintiff did not learn about the existence of rumors second-hand; her testimony shows that she was directly confronted with rumors. In this case, the existence of rumors is not hearsay, but rather a material fact. "[E]vidence that rumors or false reports were disseminated is not hearsay when they are not offered for the truth of the rumors but for the fact that the rumors were spread." Apex Oil Co. v. DiMauro, No. 82 CIV 1796 (KMW) 1990 U.S. Dist. LEXIS 10867 *7 (S.D.N.Y. August 21, 1990). A reasonable jury could find that Mr. Smith was using rumors as a weapon to create a hostile work environment for Plaintiff. See, e.g., Jew v. The University of Iowa, 749 F. Supp 946 (S.D. Iowa, 1990).

Furthermore, it is clear from records kept in the ordinary course of business, the directives issued by Defendant, that Mr. Smith was directed to "stop any discussion about [his] relationship with Mrs. Southerland" (doc. 15). Fed. R. Evid. 803(6). A reasonable jury could conclude from this directive that Defendant employer was warning its employee, Mr. Smith, to stop

spreading rumors.  For these reasons, the Court will not strike Plaintiff's references to rumors or the content of such rumors. Such references do not constitute hearsay.

### C. Plaintiff's Sexual Harassment Claim Pursuant to Ohio Revised Code § 4112

Defendant's arguments that Plaintiff has failed to establish a claim for sexual harassment pursuant to Ohio Revised Code § 4112 track its arguments articulated above pertaining to Plaintiff's Title VII claim (doc. 10).  Plaintiff's response, citing Hampel v. Food Ingredients Specialites, Inc., 89 Ohio St. 3d 169, 175 (2000), argues that its Title VII analysis applies equally to the question of whether Smith's conduct was severe or pervasive enough to rise to the level of a hostile work environment (doc. 15).

The Court finds Plaintiff's position well-taken, and for the reasons articulated above in its Title VII analysis, finds that Plaintiff has likewise alleged conduct severe or pervasive enough to constitute a sexual harassment claim pursuant to Ohio Revised Code § 4112.  As such, Defendant's Motion to Dismiss such claim is denied.

### D. Plaintiff's Ohio Public Policy Claim

Plaintiff argues under Painter v. Grailey, 70 Ohio St. 3d 377 (1994) that an employer cannot terminate an employee for a reason that violates the articulated public policy of the state of Ohio (doc. 15).  Plaintiff states the public policy of Ohio opposes sexual harassment, and that as she has stated a prima facie case

18

for age discrimination, summary judgment should not be granted on this claim (Id.).   Defendant's argument in opposition to the Ohio public policy claim is premised upon its view that Plaintiff's prima facie case fails.   As the Court has rejected Defendant's view, the Court similarly finds no basis for a grant of summary judgment on Plaintiff's Ohio public policy claim.

### E.   Plaintiff's Common Law Tort Claim

Defendant argues that Plaintiff's "tort of sexual harassment" claim should fail as a matter of law (doc. 10).  As for such claim, the Court notes in Kerans v. Porter, 61 Ohio St.3d 486 (1991), the Ohio Supreme Court expressly held that "an employer has a duty to provide its employees with a safe work environment and, thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees." Id. at 493.   In so holding, the Ohio Supreme Court found "where an employer knows or has reason to know that one of his employees is sexually harassing other employees, he may not sit idly by and do nothing," and that "[t]he appropriate response . . .may range in severity from a verbal warning, to a transfer, to a temporary suspension, to a firing, [and] will depend on the facts of the particular case, including the frequency and the severity of the employee's actions." Id. at 494.

Defendant argues that Plaintiff's claim fails under Kerans, 61 Ohio St.3d 486, because in Kerans the employer knew or should have known of the proclivities of the employee harasser because of prior incidents (doc. 17).   Defendant further argues

that <u>Kerans</u> places the burden on Plaintiff to establish that the alleged harasser posed a threat of harm (<u>Id</u>.).  Defendant's narrow interpretation of the applicability of <u>Kerans</u> is not well-founded in the light of case law.  Under <u>Seiber v. Wilder</u>, it is clear that "it does not necessarily follow that summary judgment would be appropriate where the accused employee did not have a history of sexually harassing behavior."  No. 94 CA 32, 1994 Ohio App. LEXIS 4609 at *8-*9 (Ohio Ct. App. Oct 12 1994).  Furthermore, to the extent that <u>Kerans</u> places the burden on Plaintiff to establish that Mr. Smith presented a threat of harm, the Court finds such burden met.  Plaintiff states that Mr. Smith asked for directions to her home.  Mr. Smith did not cease his behavior toward her despite warnings from his employer.  Mr. Smith allegedly stared at Plaintiff excessively to the point where it was noticed by other employees.  Mr. Smith allegedly started false rumors intimating that he had a sexual relationship with Plaintiff.  Taken together, the facts show that under these circumstances Plaintiff was reasonable to perceive a threat of harm.

Plaintiff argues that courts have applied the elements of an Ohio Revised Code Chapter 4112 sexual harassment claim in interpreting <u>Kerans</u> (doc. 15)(<u>citing</u> <u>Barney v. Chi Chi's, Inc.</u>, 84 Ohio App. 3d 40 (1992); <u>Seiber</u>, 1994 Ohio App. LEXIS 4609 (Ohio Ct. App. Oct. 12, 1994), <u>Thompson v. Western Auto Supply Co.</u>, No. 95 CA-E-05-030, 1996 Ohio App. LEXIS 3703 (Ohio Ct. App. May 8, 1996)).  The Court finds Plaintiff's position well-taken.  As Plaintiff's Title VII and Ohio Rev. Code § 4112 claims have been

found adequate to withstand Defendant's Motion for Summary Judgment, so does Plaintiff's common law claim.

### F.  Plaintiff's Negligent Retention Claim

Under Ohio law, to successfully plead a negligent retention claim, a plaintiff must establish "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employer's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." Evans v. Ohio State Univ., 112 Ohio App. 3d 724, 739 (1996). Such a claim can be actionable when one employee harms another employee. Peterson v. Buckeye Steel Casings, 133 Ohio App. 3d 715 (1999).

Defendant's Motion attacks Plaintiff's negligent retention claim on two theories (doc. 10), both of which Plaintiff correctly refutes (doc. 15). Defendant first argues that a negligent retention claim only applies to injuries inflicted upon non-employees by an employee (doc. 10). Peterson demonstrates that this is an incorrect proposition of law. 133 Ohio App. 3d 715 (1999). Defendant's second argument is that Plaintiff bears the burden of showing it had knowledge that Mr. Smith had a prior history of sexual harassment (doc. 10). Again, Peterson demonstrates that an employer often gains knowledge of harassment through a victim's complaints. 133 Ohio App. 3d 715 (1999). There

is no requirement in Evans that the employer's knowledge must be of a prior history of harassment in a negligent retention case, as opposed to a negligent hiring case.  112 Ohio App. 3d 724.  The case at bar does not involve allegations of negligent hiring.

Defendant argues in its Reply that even if Plaintiff can establish the first four elements of the tort of negligent retention, she cannot establish that she was harmed (doc. 17). Defendant argues that "Mr. Smith took no action against Plaintiff which caused her any harm or which would lead a reasonable person to believe that the possibility of harm existed in the workplace" (Id.).  The Court does not find Defendant's position well-taken. As already explained in its analysis of Plaintiff's Kerans claim, a reasonable person could very well have perceived a risk of harm from the actions of Mr. Smith.  For what other reason would her employer advise her to obtain a whistle?  Additionally, Plaintiff recounts that the stress caused by Mr. Smith's actions forced her to take time off work for insomnia, headaches, and depression. Plaintiff's final encounter with Mr. Smith necessitated some level of medical care.  Nothing in Evans bars a claim for psychic injury. 112 Ohio App. 3d 724.  Plaintiff has at least raised a genuine issue as to the material fact of such injury.  For all of the above reasons, Defendant's Motion for Summary Judgment as to Plaintiff's negligent retention claim is denied.

CONCLUSION

The Court finds that Plaintiff has successfully raised genuine issues of material fact as to whether she was sexually

harassed by Ralph Smith when they were both working as bus drivers for the Defendant Sycamore Community School District Board of Education.   Plaintiff has similarly demonstrated that Defendant knew a hostile environment existed, and raises a genuine issue as to the material fact of whether Defendant failed to take appropriate remedial action.   Plaintiff's causes of action under Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000, under Ohio Revised Code § 4112, Ohio Public Policy, and Ohio common law therefore withstand Defendant's Motion for Summary Judgment.

Defendant's concerns that Plaintiff has introduced improper and hearsay testimony do not affect the Court's conclusion.   The Court has not relied upon the testimony Defendant attacks as improper.   The Court further finds that the testimony attacked as hearsay does not constitute hearsay.

Defendant argues that Plaintiff is not entitled to punitive damages.   The question of punitive damages, however, is not a dispositive question, but is a determination to be made in a damages calculation if and when liability is determined. Therefore, Defendant's attention to this question is premature, and the Court will not address punitive damages at this time.

Finally, as Plaintiff has abandoned her claims for sex discrimination under federal and state law and for intentional infliction of emotional distress, the Court grants Defendant's Motion for Summary Judgment as to these claims.   Accordingly, the Court DENIES IN PART Defendant's Motion for Summary Judgment (doc. 10), as to Plaintiff's claims pursuant to 42 U.S.C. § 2000, Ohio

Revised Code § 4112, Ohio public policy, common law sexual harassment and negligent retention, and GRANTS IN PART Defendant's Motion as to Plaintiff's federal and state law claims for sexual discrimination and for intentional infliction of emotional distress (Id.).

      SO ORDERED.

Dated: 7/7/03

_____
S. Arthur Spiegel
United States Senior District Judge